Regis J. KIRBY, Marie Maiers, Emily Traum, Henry Simmons, Patrick Maloney, and Norbert Loveland, and all others similarly situated, Appellants,

v.

UNITED STATES GOVERNMENT, DEPARTMENT OF HOUSING & URBAN DEVELOPMENT, St. Francis General Hospital, and St. Francis Plaza, Inc.

No. 81–1264.

United States Court of Appeals, Third Circuit.

Argued Dec. 1, 1981.

Decided March 19, 1982.

---

Michael W. Zurat (argued), Mullen & Zurat, Pittsburgh, Pa., for appellants.

J. Alan Johnson, U. S. Atty., Joel B. Strauss, Paul J. Brysh, Asst. U. S. Attys., Pittsburgh, Pa., for United States Dept. of Housing & Urban Development; Peter M. Campanella, Regional Counsel, Paul A. Feiner, Associate Regional Counsel, Patricia Cook Profit, Attorney-Advisor (argued), Felix R. Orraca, Attorney-Advisor, U. S. Dept. of Housing & Urban Development, Philadelphia, Pa., of counsel.

Richard H. Martin, Joan P. Feldman (argued), Baskin & Sears, P. C., Pittsburgh, Pa., for St. Francis General Hospital and St. Francis Plaza, Inc.

Before ALDISERT, ROSENN and WEIS, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

Residents of a neighborhood in which subsidized housing for the elderly and handicapped is to be constructed appeal from the dismissal of their action, brought in the Western District of Pennsylvania, seeking an injunction to halt the proposed housing complex. We reverse and remand.

## I.

. St. Francis General Hospital (Hospital), established in 1886, is a long-standing, integral part of the health care and rehabilitation community in Pittsburgh. In June

1978 the Hospital filed a preliminary application with the United States Department of Housing and Urban Development (HUD), to sponsor a housing project for the elderly and handicapped. Construction of the project, organized as St. Francis Plaza, Inc. (Plaza or Project), was to be funded principally with monies loaned under section 202 of the Housing Act of 1959 (Act), as amended, 12 U.S.C. § 1701q (1976 & Supp. IV 1980).[1] HUD granted approval for funding of the Plaza, ultimately planned as a fourteen-story building with the three lowest floors designated for commercial space; floors four through thirteen, residential apartments; and the fourteenth floor, a penthouse community area. Because the total commercial space in the Plaza represented 13 percent of the Plaza's gross floor area, exceeding the 10 percent commercial area limitation for section 202 projects, see HUD Handbook 4571.1 REV ¶ 5–23C, the project sponsor sought and obtained special authorization for the inclusion of the excess commercial space.

At the time the Hospital sponsored and obtained approval for the Project, it was closely tied to the Plaza in several respects. First, the Plaza was to be located adjacent to the Hospital on land then owned by the Hospital. Second, the commercial space in the Plaza was to be divided to provide one floor of offices for doctors on the Hospital's staff and two floors for the Hospital's computer system, all of which were then located within the Hospital itself. Finally, the Hospital and the Project had identical boards of directors. Although an official at HUD acknowledged that this arrangement raised "concerns involving institutional character," Memorandum dated March 21, 1980, of Paul T. Cain, Pittsburgh Area Office, HUD, to George O. Hipps, Jr., Director of Multifamily Housing Development, HUD, that official concluded that the benefits to be derived from having the variety of health services so conveniently available to the elderly and handicapped residents of the Plaza outweighed the institutional concerns.

The Plaza met with outspoken resistance from area residents, who orchestrated a campaign against the Plaza's construction. When lobbying efforts proved unavailing, a core of local residents commenced the instant lawsuit[2] naming the Hospital, the Plaza, and HUD as defendants.

■ The plaintiffs' complaint[3] seeks temporary and permanent injunctive relief to halt construction of the Plaza. The complaint raised several grounds for holding

---

1. The Act addressed two principal issues: urban renewal and low-rent public housing. It amended and extended previous legislation relating to the provision and improvement of housing and the renewal of urban communities. S.Rep.No.924, 86th Cong., 1st Sess., reprinted in 1959 U.S.Code Cong. & Ad.News 2844, 2844. Section 202 of the Act, as now amended, has as its primary goal "to assist private nonprofit corporations, limited profit sponsors, consumer cooperatives, or public bodies or agencies to provide housing and related facilities for elderly or handicapped families." 12 U.S.C. § 1701q(a)(1) (1976).

2. Although the plaintiffs have captioned their action to include as plaintiffs "all others similarly situated," to date no attempt has been made to comply with the class action certification requirements of Fed.R.Civ.P. 23.

3. We believe that we cannot refrain from commenting on the inadequacy and disorder of the papers which have been filed by plaintiffs' counsel in this lawsuit and the obvious lack of care that went into their preparation. Both the complaint below and the briefs and appendix to this court are replete with glaring omissions and miscitations and reflect a thorough ignorance of the rules of this circuit. Indeed, although this case comes before us on, among other grounds, the granting of a motion to dismiss for failure to state a claim upon which relief can be granted, plaintiffs' counsel initially failed to include a copy of his complaint in his appendix so that we could consider the complaint's adequacy. That plaintiffs' counsel was remiss does not, of course, excuse the appellees from seeing to it that a proper appendix was filed prior to argument.

Under the law of this circuit, failure to file an appendix which complies with the rules of this court may constitute sufficient grounds for dismissal of the appeal. See Kushner v. Winterthur Swiss Ins. Co., 620 F.2d 404 (3d Cir. 1980). Rather than invoke so harsh a remedy in this case, we have chosen to require plaintiffs to file a new, conforming appendix and to tax the costs of the appendices by separate order to plaintiffs' counsel personally.

HUD approval of funding of the Plaza improper, only three of which warrant discussion.[4]

Plaintiffs' primary allegation, brought in their capacities both as local residents directly affected by the Plaza and as taxpayers, is that the HUD funds will be used primarily for the benefit of the sponsor, i.e., the Hospital, and not for the benefit of the elderly as required by 12 U.S.C. § 1701q. They allege that the proposed structure is merely an extension of the Hospital and thus violates guidelines set forth in pertinent HUD regulations, and that neither the computer center nor a full floor of medical offices is necessary to serve the projected one hundred residents of the Plaza. The complaint also avers that no member of the community was allowed representation on the board of directors of the Plaza. Finally, the complaint alleges that the plaintiffs will suffer both financial and nonfinancial harm because their neighborhood will be blighted by additional commercial property and their residential property will decrease in value, because federal funds will be misappropriated, and because the elderly will not be the primary beneficiaries of the Plaza. Plaintiffs' jurisdictional allegations implicitly incorporate additional substantive claims.[5]

The district court denied the plaintiffs' motion for temporary injunctive relief and then, perhaps impatient with the disorder of plaintiffs' pleadings and arguments,

summarily granted the defendants' motion to dismiss on the twin grounds that the plaintiffs lacked standing and they failed to state a claim for which relief could be granted. On appeal, plaintiffs address two questions: standing and "subject matter jurisdiction," the latter in reality a discussion of both the district court's subject matter jurisdiction—a matter not raised by the district court order nor by the defendants in this court[6]—and the sufficiency of the plaintiffs' claim for relief. We conclude that, however unartfully drafted, the complaint is sufficient to withstand dismissal at this stage of the proceedings.

## II.

The district court concluded, *inter alia*, that "[p]laintiffs have no standing to seek judicial review of economic and financial determinations committed by law to the discretion of HUD." *Kirby v. United States*, No. 80–919, typescript at 1 (W.D.Pa. Jan. 8, 1981). That conclusion incorporates the resolution of two separate questions. The first is whether the plaintiffs are the proper persons to bring an action challenging HUD's decision to provide funds for the Plaza, i.e. whether they have standing to sue. *See Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975); *Bowman v. Wilson*, 672 F.2d 1145, 1150 (3d Cir. 1982). The second question focuses not on the identity of the parties but on

---

**4.** In addition to raising the points noted in the text *infra*, the complaint alleged:

(1) that the Hospital is both sponsor and mortgagor of the project, in violation of 12 U.S.C. § 1701q(d)(2);

(2) that a "gag order" placed on local HUD employees violates the plaintiffs' rights under the first, fourth, and fourteenth amendments;

(3) that the Hospital is engaged in a continuing trespass in the Lawrenceville (Pa.) area; and

(4) that the Plaza is designed exclusively for the elderly and the handicapped, and does not include provision for low-income and minority individuals in contravention of federal law and HUD regulations.

We conclude that all of these objections are without merit and will not address them further.

**5.** The complaint asserts jurisdiction under 5 U.S.C. § 701 et seq., the first, fifth, and fourteenth amendments, 28 U.S.C. § 1337, 28 U.S.C. § 1361, and 42 U.S.C. §§ 1983 and 1985.

**6.** Plaintiffs have not predicated subject matter jurisdiction of their action on 28 U.S.C. § 1331. Their allegation that jurisdiction lies by virtue of 28 U.S.C. § 1337 is, however, sufficient to support the instant action. That section provides:

The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies.

We have elsewhere recognized that jurisdiction of a claim brought under the Act may be asserted under 28 U.S.C. § 1337. *See Davis v. Romney*, 490 F.2d 1360, 1365–66 (3d Cir. 1974).

whether the legality of HUD's action is subject to judicial review, i.e. whether there exists a cause of action on the parties' behalf. *See Society Hill Civic Association v. Harris*, 632 F.2d 1045, 1055 (3d Cir. 1980). We shall evaluate the claims raised by plaintiffs which are pertinent to these questions.

### A.

■ Objections that those challenging the action of federal administrative agencies lack standing are evaluated by reference to two queries: (1) the constitutional one—"whether the plaintiff alleges that the challenged action has caused him injury in fact, economic or otherwise," and (2) prudential considerations, including, "whether the interest sought to be protected by the complainant is arguably within the zone of interest to be protected or regulated by the statute or constitutional guarantee in question."[7] *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 152, 153, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970). The requirement that the plaintiffs have personally suffered some injury is grounded in the constitutional limitation of the power of federal courts to "Cases" and "Controversies." U.S.Const. art. III, § 2; *see Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, —— U.S. ——, ——, 102 S.Ct. 752, 757, 70 L.Ed.2d 700 (1982); *Association of Data Processing Service Organizations, Inc. v. Camp, supra*, 397 U.S. at 151, 90 S.Ct. at 829. The nature of constitutional injury was recently restated by the Court:

> [A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant,' *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99 [99 S.Ct. 1601, 1607, 60 L.Ed.2d 66] (1979), and that the injury 'fairly can be

traced to the challenged action' and 'is likely to be redressed by a favorable decision,' *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38, 41 [96 S.Ct. 1917, 1924, 1925, 48 L.Ed.2d 450] (1976).

*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., supra*, —— U.S. at ——, 102 S.Ct. at 757 (footnote omitted).

Unlike the requirement that the plaintiff have suffered injury in fact, the prudential consideration implicated in this case, the zone-of-interest test, is not constitutionally mandated. Rather, it is a prudential limitation fashioned by the Court which addresses whether the person asserting a claim is an intended beneficiary of the rule of law which he seeks to invoke. *See Boston Stock Exchange v. State Tax Commission*, 429 U.S. 318, 320, 97 S.Ct. 599, 602, 50 L.Ed.2d 514 n.3 (1977); *Warth v. Seldin*, 422 U.S. 490, 500, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975); *Bowman v. Wilson*, 672 F.2d 1145, 1150–1152 (3d Cir. 1982); *Society Hill Civic Association v. Harris*, 632 F.2d 1045, 1054 (3d Cir. 1980).

The plaintiffs' allegation that they will suffer both financial and nonfinancial harm because of the proposed relocation to the Plaza of facilities presently situated in the Hospital is sufficient to satisfy the injury-in-fact leg of the standing doctrine. Their claim that construction of the Plaza as approved by HUD includes a commercial use that will attract numerous nonresidents of the Project who would not otherwise come to the area and thus will bring about a decrease in the value of their property establishes the requisite minimum injury in fact required under Art. III. It is no answer that *some* type of commercial property may be found in any section 202 project. The services of neither the doctors' offices nor the computer facility appear to be intended, as the statute contemplates, primarily for the benefit of elderly or handicapped

---

7. In appropriate cases the question whether a litigant satisfies the zone-of-interest test may also be framed by reference to the concept of third-party standing. *See Bowman v. Wilson*,

672 F.2d 1145, 1151–1152 (3d Cir. 1982); *Hetherton v. Sears, Roebuck & Co.*, 652 F.2d 1152, 1155–56 (3d Cir. 1981); note 11 *infra*.

families residing in the Plaza or the immediate neighborhood.[8] A properly conforming commercial use could well result in less commercialization of the neighborhood and thus better support residential property values than would the allegedly nonconforming use. *Cf. Society Hill Civic Association v. Harris*, 632 F.2d 1045, 1054 (3d Cir. 1980) (allegation that construction of proposed housing under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1977 will cause a substantial diminution in property values is sufficient to satisfy injury-in-fact component of standing).

Similarly, plaintiffs' allegations of nonfinancial injury, namely that their neighborhood will be blighted by the addition of these proposed commercial properties, is adequate to establish the requisite injury in fact. Locating the doctors' offices and the Hospital's computer system in the Plaza will significantly increase the flow of people and commercial activity into the building and thus disturb the neighbors living contiguous to it. Not only will there be traffic generated between the Hospital and the Plaza that would not otherwise exist as a result of the computer operations, the Plaza will also experience a marked increase in visitors from outside because of the many doctors' offices to be located in the Plaza. Traffic into the Hospital will also increase as the freed up space is utilized, thus further disturbing local residents. *Cf. Lower Moreland Homeowner's Association v. HUD*, 479 F.Supp. 886, 895–96 (E.D.Pa. 1979) (allegation that aesthetic injury and severe traffic congestion will result from

construction of four-story apartment building in an area dominated by single family houses sufficient to establish injury in fact supporting a claim under section 202 of the Act, 12 U.S.C. § 1701q, and section 213 of the Housing and Community Development Act of 1974, 42 U.S.C. § 1439).

Finally, the plaintiffs' allegation that local residents have been denied the representation on the Plaza's board that they are entitled to by statute, *see* 12 U.S.C. § 1701q(d)(2) (Supp. IV 1980), quoted *infra*, also establishes the requisite injury in fact. For "[t]he actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing ....'" *Warth v. Seldin*, 422 U.S. 490, 500, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1979) (quoting *Linda R. S. v. Richard D.*, 410 U.S. 614, 617 n.3, 93 S.Ct. 1146, 1148 n. 3, 35 L.Ed.2d 536 (1973)). Plaintiffs as local residents entitled to "significant representation" of their views on the Plaza's board have standing to request judicial review of the adequacy of that representation under the board's present composition.

■ All three instances of injury identified above satisfy the remaining requirements of constitutional injury identified in *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., supra.* The injuries complained of are traceable to HUD approval of the Plaza as presently proposed and will be redressed by a decision favorable to the plaintiffs.[9]

---

**8.** 12 U.S.C. § 1701q(a)(1) states that "[t]he purpose of this section is to assist [various sponsors] to provide housing and *related facilities* for elderly or handicapped families." (Emphasis added.) "Related facilities" are defined in 12 U.S.C. § 1701q(d)(8) as

(A) new structures *suitable for use by elderly or handicapped families residing in the project or in the area* as cafeterias or dining halls, community rooms or buildings, workshops, adult day health facilities, or other essential service facilities.

**9.** Plaintiffs cannot sue, however, in their capacity as taxpayers complaining about the misappropriation of federal monies. *See Valley*

Forge Christian College v. Americans United for Separation of Church and State, Inc., supra; *Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). For a taxpayer to have standing to complain of Government action by virtue of his liability for taxes, two requirements must be satisfied. First, "a taxpayer will be a proper party to allege the unconstitutionality only of exercises of congressional power under the taxing and spending clause of Art. I, § 8, of the Constitution." *Flast v. Cohen, supra,* 392 U.S. at 102, 88 S.Ct. at 1953. Second, a taxpayer must "show that the challenged enactment exceeds specific constitutional limitations of the taxing and spending power and not simply that the enactment is generally

Plaintiffs also satisfy the prudential element of the *Data Processing* standing inquiry: as residents of the area contiguous to the proposed site for the Plaza they are within the zone of interest of section 202 of the Act. Although the elderly and the handicapped are the primary beneficiaries of the Act, section 202 contains at least two provisions which demonstrate that Congress was concerned both with the welfare of neighborhoods in which projects would be constructed under section 202 and with community participation in the projects' management. 12 U.S.C. § 1701q(a)(6) provides in part:

> In reviewing applications for loans under this section, the Secretary may consider the extent to which such loans—
>
> (A) will assist in stabilizing, conserving, and revitalizing neighborhoods and communities; ...

12 U.S.C. 1701q(a)(2) authorizes the Secretary of HUD to "make loans to any corporation (as defined in subsection (d)(2) of this section)." The section's definition of corporation specifically requires community participation in the management of projects under section 202 of the Act. It provides in relevant part:

> (2) The term "corporation" means any incorporated private institution or foundation—
>
> .  .  .  .  .
>
> (B) which has a governing board (i) the membership of which is selected in a manner to assure that there is significant representation of the views of the community in which such project is located, and (ii) which is responsible for the operation of the housing project assisted under this section; ...

12 U.S.C. § 1701q(d)(2). Taken together, these sections evince sufficient concern for the interests of residents of the areas where section 202 projects are to be constructed to bring plaintiffs within the zone of interest of the Act.[10] Cf. *Society Hill Civic Association v. Harris*, 632 F.2d 1045, 1054 (3d Cir. 1980) (local residents within zone of interest of Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970); *Shannon v. HUD*, 436 F.2d 809, 817–18 (3d Cir. 1970) (local residents within zone of interest of section 105(d) of the Act, 42 U.S.C. § 1455(d); *Lower Moreland Homeowner's Association v. HUD*, 479 F.Supp. 886, 896 (E.D.Pa.1979) (local residents with-

---

beyond the powers delegated to Congress by Art. I, § 8." *Id.* at 102–03, 88 S.Ct. at 1953; see *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, supra, ── U.S. at ──, 102 S.Ct. at 762. Plaintiffs satisfy neither requirement of the *Flast* test. *Flast* limits taxpayer standing to challenges of exercises of congressional taxing and spending power and is not applicable to the action of administrative agencies such as HUD which are extensions of the Executive Branch. See *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, supra, ── U.S. at ──, 102 S.Ct. at 762. And plaintiffs have identified no specific constitutional limitation on the type of spending at issue here.

**10.** Our conclusion is reinforced by a passage from the House Report accompanying the enactment of 12 U.S.C. § 1701q(d)(2):

> In order to assure that the needs of the non-elderly handicapped are better served ... and to assure that representatives of communities in which section 202 projects are located have a significant role in the operation of assisted projects, the committee has made four changes in the authorizing legislation for this program.
>
> .  .  .  .  .
>
> The committee was also concerned that the views of the community in which a section 202 project is located be represented in a significant way in the governing board of the entity which is responsible for the operation of the project. Accordingly, the definition of "corporation" eligible to receive a loan under this section was revised to provide that an eligible corporation must have a governing board responsible for the operation of this specific project whose membership has been selected in a manner *which assures that there is significant representation of the views of the particular community in which the project is located and not solely the views of an organization or sponsor whose scope of interest extends beyond this particular community.*

H.R. 95–1161, May 15, 1978, at 20–21 (emphasis added).

in zone of interest of Housing and Community Development Act of 1974).[11]

We therefore hold that plaintiffs have standing in their capacity as local residents of the particular community in which the project is located to challenge HUD's approval of funding for the Plaza under section 202 of the Act.

### B.

The district court also dismissed plaintiffs' complaint on the ground that they could not "seek judicial review of economic and financial determinations committed by law to the discretion of HUD." *Kirby v. United States*, No. 80–919, typescript at 1 (W.D.Pa. Jan. 8, 1981).

Judicial review of the acts of administrative agencies may be obtained under the Administrative Procedure Act (APA) by "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. The availability of that review is circumscribed, however, by 5 U.S.C. § 701(a), which provides in relevant part:

> This chapter applies, according to the provisions thereof, except to the extent that—
>
> .    .    .    .    .
>
> (2) agency action is committed to agency discretion by law.

■ The Supreme Court has made it clear that there is a strong presumption that agency action is reviewable. As the Court noted, the APA's " 'generous review provisions' must be given a 'hospitable' interpretation," *Abbott Laboratories v. Gardner*, 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967) (quoting *Shaughnessy v. Pedreiro*, 349 U.S. 48, 51, 75 S.Ct. 591,

593, 99 L.Ed. 868 (1955)), and "only upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review." *Id.* Accord, e.g., *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); *Society Hill Civic Association v. Harris*, 632 F.2d 1045 (3d Cir. 1980); *Local 2855, AFGE v. United States*, 602 F.2d 574 (3d Cir. 1979). Agency action should therefore only be found unreviewable "in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.' " *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971) (quoting S.Rep.No. 752, 79th Cong., 1st Sess. 26 (1945)). Thus, "[a] predicate to nonreviewability is that the agency have *broad* discretionary powers, not merely that its action involve *some* discretion." *Local 2855, AFGE v. United States*, 602 F.2d 574, 578 (3d Cir. 1979).

Even when agency action is determined to have been committed to agency discretion by law, that determination does not completely insulate the action from judicial review. As this court has noted, a court may in any event consider allegations

> that the agency lacked jurisdiction, that the agency's decision was occasioned by impermissible influences, such as fraud or bribery, or that the decision violates a constitutional, statutory or regulatory command. For the APA circumscribes judicial review only '*to the extent that* . . . agency action is committed to agency discretion by law;' it does not foreclose judicial review altogether.

*Id.* at 580 (footnote omitted).

At first blush, the wording of 12 U.S.C. § 1701q suggests that a HUD decision un-

---

11. Plaintiffs cannot, as they attempt to do, bring suit on behalf of the elderly and handicapped who will be denied access to the related facilities or to the additional residential space that would be available to them in a properly conforming project. This is not an appropriate case for third-party standing, which may be asserted when a person injured in his own right champions the constitutional rights of a third person who is also injured by the same activity but is hampered in bringing the constitutional challenge. *See Singleton v. Wulff*, 428 U.S. 106, 114–15, 96 S.Ct. 2868, 2874, 49 L.Ed.2d 826 (1976) (plurality); *Bowman v. Wilson*, 672 F.2d 1145, 1151–52 (3d Cir. 1982). Any claim of the elderly and handicapped derives from the Act and does not rise to the level of a constitutional violation. Moreover, there appears to be no impediment to their suing on their own behalf.

der that section to provide funding for a housing project for the elderly and handicapped is of a type committed to agency discretion and hence unreviewable. The section provides, in directory language, that the Secretary of HUD *"may* make loans" to qualifying corporations. 12 U.S.C. § 1701q(a)(2) (emphasis added). More to the point, the section instructs the Secretary that he "may consider" the extent to which projects constructed with funds provided under this section "will assist in stabilizing, conserving, and revitalizing neighborhoods and communities." 12 U.S.C. § 1701q(a)(6)(A). Yet despite what appears to be an unbridled grant of discretion, this court has already recognized that HUD's broad discretion in approving projects must be exercised in a manner consistent with the national housing objectives set forth in the several applicable statutes. *Shannon v. HUD,* 436 F.2d 809, 819 (3d Cir. 1970); *accord United States v. Winthrop Towers,* 628 F.2d 1028, 1035–36 (7th Cir. 1980); *Russell v. Landrieu,* 621 F.2d 1037, 1041 (9th Cir. 1980). Thus, at the very least, this court can review a HUD decision to assure itself that it is not in conflict with those policies.

██ In the present case, however, there exist more specific bases for judicial review of the decision to fund the Plaza. Regardless of the breadth of the Secretary's discretion in deciding which projects to fund, that decision must not be inconsistent with "a constitutional, statutory, or regulatory command." *Local 2855, AFGE v. United States, supra,* 602 F.2d at 580. And, taking the facts in this review of the granting of a motion to dismiss as plaintiffs have alleged, *see Johnsrud v. Carter,* 620 F.2d 29, 33 (3d Cir. 1980), plaintiffs have specifically identified two limitations on the Secretary's discretion which appear to have been violated, entitling plaintiffs to the injunction which they seek. 12 U.S.C. § 1701q(d)(2) requires that any project funded under this section

have a governing board selected in a manner "to assure that there is significant representation of the views of the community in which such project is located." *Id.* Plaintiffs have alleged that "[n]o member of the community was allowed representation on this Corporation, i.e. St. Francis Plaza, Inc." Complaint ¶ 5. Although the mere fact that the Hospital and the Plaza have interlocking boards does not necessarily establish a violation of 12 U.S.C. § 1701q(d)(2), the factfinder below can determine whether that allegation is in fact true, and if it is, the plaintiffs are entitled to relief.

The second explicit limitation on the Secretary's discretion applicable to this case is found in 24 C.F.R. § 277.4(c) (1981), which provides, "Nursing homes, hospitals, or similar medical establishments, and chapels or other facilities of a religious nature are not eligible for loan assistance." Plaintiffs in their complaint have alleged that "the proposed structure is merely an extension of St. Francis Hospital and violates all respective Federal guidelines set forth in the United States Code of Federal Regulations," and have specifically relied on 24 C.F.R. § 277.4(c). Complaint ¶ 12. Accepting the facts as alleged in the light most favorable to the plaintiffs, the Plaza was constructed in order to free up space in the Hospital for other purposes; section 202 funds were thus improperly used in the construction of hospital facilities contrary to HUD regulations. In sum, plaintiffs have identified specific statutory and regulatory limitations on the Secretary's discretion under 12 U.S.C. § 1701q which are properly reviewable by a court [12] and under which plaintiffs may seek appropriate legal and equitable redress.

### III.

For the foregoing reasons, the order of the district court dismissing plaintiffs' com-

---

12. The scope of review applicable under the APA is set forth in 5 U.S.C. § 706. The provisions applicable to this action empower a federal court to hold unlawful agency action found to be "arbitrary, capricious, an abuse of discre- tion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A) & (C).

plaint will be reversed and the case will be remanded for further proceedings consistent with this opinion.