

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-23-2003

# Horvath v. Keystone Health Plan

Precedential or Non-Precedential: Precedential

Docket No. 02-1731

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Horvath v. Keystone Health Plan" (2003). *2003 Decisions.* Paper 403.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/403

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed June 23, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 02-1731

DONNA HORVATH,
on behalf of herself and
all others similarly situated

v.

KEYSTONE HEALTH PLAN EAST, INC.

DONNA HORVATH, on behalf of herself
and the proposed class she seeks
to represent,

Appellant

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No.00-cv-00416)
District Judge: Honorable Ronald L. Buckwalter

Argued on October 18, 2002

Before: ROTH, GREENBERG, *Circuit Judges*
and WARD,* *District Judge*

(Opinion filed: June 23, 2003)

---

* Honorable Robert J. Ward, District Court Judge for the Southern
District of New York, sitting by designation.

H. Laddie Montague, Jr., Esquire
Jerome M. Marcus, Esquire (Argued)
Jonathan Auerbach
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19013

*COUNSEL FOR APPELLANT*

Edward F. Mannino, Esquire
 (Argued)
David L. Comerford, Esquire
James L. Griffith, Esquire
Akin, Gump, Strauss, Hauer
 & Feld, L.L.P
One Commerce Square
2005 Market Street, Suite 2200
Philadelphia, PA 19103

*COUNSEL FOR APPELLEE*

---

## OPINION OF THE COURT

---

ROTH, Circuit Judge:

Health Maintenance Organizations (HMOs) routinely utilize financial incentives to encourage physicians to ration care in a cost-effective manner. This case presents the question whether, when the existence of such a plan has been disclosed, the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq.*, requires HMOs automatically to disclose further information on these incentives to plan beneficiaries. Because we conclude that, under the circumstances of this case, neither our own precedents nor the canons of statutory construction support the imposition of such a duty, we will affirm the District Court's grant of summary judgment to the defendant HMO.

## I. Facts

Plaintiff-appellant Donna Horvath is the benefits administrator at a law firm and a member of the HMO of

defendant-appellee Keystone Health Plan East, Inc. The Keystone HMO is the only healthcare plan offered to employees of Horvath's firm. The firm pays all premiums directly to Keystone as an employee benefit and does not make any specific healthcare deductions from employees' paychecks.

Horvath, both as a member of the Keystone HMO and as her firm's benefits administrator, was provided with information regarding the plan's structure. Specifically, she received a letter from Keystone disclosing its practice of attempting to "[c]ontrol the increase of health care costs through negotiated agreements with health care providers, doctors, hospitals, pharmacy, and ancillary providers," as well as a Doctor and Hospital Directory that included a description of the physician compensation plan.[1] Horvath also received literature, the Keystone Health Plan East Member Handbook and the September 1999 Letter to Benefits Administrator, which provided that she could request additional information regarding physician compensation. She concedes she never made any effort to do so.

## II. Procedural History

Horvath's complaint was filed on January 21, 2000, as a proposed class action. It alleges that Keystone is a "fiduciary," as that term is defined under ERISA,[2] and that

---

1. Horvath admitted during her deposition that she never read the information contained in the Doctor and Hospital Directory but stated that, if she had read the information, she "might have questioned a physician's recommendation for a particular service or treatment."

2. In their submissions below, the parties did not vigorously contest the issue of whether Keystone qualifies as a "fiduciary" under ERISA. *See Horvath v. Keystone Health Plan East, Inc.*, No. CIV.A. 00-0416, 2002 WL 265023, at *2-*3 (E.D. Pa. Feb. 22, 2002). Accordingly, the District Court, citing *Pegram v. Herdrich*, 530 U.S. 211, 228 n.8 (2000), assumed *arguendo* that Keystone was a fiduciary but held that it need not specifically reach the issue because of its conclusion that ERISA imposed no duty to disclose information on physician incentives. *Horvath*, 2002 WL 265023, at *3. We agree with this approach and therefore take no position with respect to whether Keystone is a fiduciary as defined by ERISA.

it therefore has a duty to disclose to plan beneficiaries "all material facts relating to the insurance benefits" it provides. Horvath contends this duty was violated when Keystone failed to disclose information on physician incentives that she believes have the potential to impact healthcare decisions made by its physicians and thus decrease the overall level of care provided. However, Horvath does not allege that she has been personally affected by the existence of the incentives or that the care she received from the Keystone HMO was defective or substandard in any way. As a remedy for the alleged breach of fiduciary duty, Horvath seeks, *inter alia*, (1) injunctive relief requiring the disclosure of information regarding physician incentives, and (2) restitution and/or disgorgement of the amount she and other members of the putative class allegedly overpaid as a result of Keystone's failure to disclose such information. She defines this amount as the difference between the value of the plan as she perceived it (*i.e.*, without a physician incentive structure) and the value of the plan as actually configured (*i.e.*, with physician incentives).

The District Court denied Keystone's motion to dismiss. The court subsequently denied Horvath's motion for class certification but granted her leave to renew the motion at the close of the discovery period. During the course of discovery, Keystone turned over numerous documents in response to Horvath's requests for production. However, Keystone withheld many other documents, objecting to requests as overly broad and not reasonably calculated to lead to the production of admissible evidence.

Horvath filed a motion to compel the production of additional documents, which on March 13, 2001, the District Court denied without prejudice. In doing so, the court noted its belief that the requests at issue were overly broad and therefore instructed Horvath to "specify with regard to each discovery request explicitly how it is relevant to the need for disclosures and not merely how it adds to [her] understanding of Keystone's operational structure." On July 13, a second motion to compel was granted in part and denied in part. Horvath then deposed two Keystone employees but took no other steps to obtain additional

information prior to the close of the discovery period. She does not appeal the District Court's denials of her motions to compel.

Keystone filed its motion for summary judgment on September 21, 2001, arguing that Horvath lacked standing to assert her ERISA claim and that no material facts were in dispute. The District Court did not expressly rule on the issue of standing but granted summary judgment to Keystone, based primarily upon the court's belief that our prior decisions regarding fiduciary disclosure under ERISA did not require Keystone to disclose information on its physician incentive structure. This appeal followed.

### III. Jurisdiction and Standards of Review

The District Court exercised subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331. We have jurisdiction to consider Horvath's appeal of the District Court's final order pursuant to 28 U.S.C. § 1291.

Our review of Horvath's standing to assert her claim is plenary. *General Instrument Corp. of Del. v. Nu-Tek Elec. & Mfg., Inc.*, 197 F.3d 83, 86 (3d Cir. 1999). We review the District Court's refusal to delay its ruling on Keystone's summary judgment motion for abuse of discretion, but our review of the order itself is plenary. *St. Surin v. Virgin Islands Daily News, Inc.*, 21 F.3d 1309, 1313 (3d Cir. 1994). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Chisolm v. McManimon*, 275 F.3d 315, 321 (3d Cir. 2001) (quoting Fed. R. Civ. P. 56(c)). Summary judgment is not appropriate, however, "if a disputed fact exists which might affect the outcome of the suit under the controlling substantive law." *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 637 (3d Cir. 1993).

### IV. Discussion

#### A. Background

HMOs provide a variety of specified health care services to members for one fixed fee. Thus, like other insurers,

HMOs attempt to control costs by carefully scrutinizing the requests for services. *Pegram v. Herdrich*, 530 U.S. 211, 219 (2000). As part of this effort, HMOs provide guidance to their physicians regarding appropriate levels of health care. *Id.* "These cost-controlling measures are commonly complemented by specific financial incentives to physicians, rewarding them for decreasing utilization of health-care services, and penalizing them for what may be found to be excessive treatment." *Id.* Accordingly, "in an HMO system, a physician's financial interest lies in providing less care, not more." *Id.*

However, the existence of such interests in no way affects the legitimacy of the HMO structure. As noted in *Pegram*, "[t]he check on [physicians' financial interests] . . . is the professional obligation to provide covered services with a reasonable degree of skill and judgment in the patient's interest." *Id.* Such incentives, in a fixed fee system, are necessary as "no HMO organization could survive without some incentive connecting physician reward with treatment rationing." *Id.* at 220.

Nevertheless, the presence of rationing in the context of medical care inevitably raises a host of policy questions, many of which are beyond the scope of those typically or easily resolved by federal courts. Indeed, "any legal principle purporting to draw a line between good and bad HMOs would embody, in effect, a judgment about socially acceptable medical risk." *Id.* at 221. Thus, questions requiring the exercise of "complicated factfinding" or "debatable social judgment are not wisely required of courts unless for some reason resort cannot be had to the legislative process, with its preferable forum for comprehensive investigations and judgments of social value, such as optimum treatment levels and health-care expenditure." *Id; cf. Maio v. Aetna, Inc.*, 221 F.3d 472, 499 (3d Cir. 2000) (rejecting notion that "in the complex world of rate structures a trier of fact, probably a jury" could determine the value of an HMO health insurance product which offers physicians incentives to withhold medical services.)

It is against this backdrop that we consider the claim at issue here.

### *B. Standing*

As a preliminary matter, we must address the threshold issue of standing. It is axiomatic that, in addition to those requirements imposed by statute, plaintiffs must also satisfy Article III of the Constitution, *see Warth v. Seldin*, 422 U.S. 490, 501, 95 S. Ct. 2197, 2206, 45 L. Ed.2d 343 (1975), which requires as follows:

> First, the plaintiff must have suffered an injury in fact — an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of — the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*AT&T Communications of N.J., Inc. v. Verizon N.J., Inc.*, 270 F.3d 162, 170 (3d Cir. 2001) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed.2d 351 (1992)). Because there is no basis for a challenge to Horvath's status as an ERISA beneficiary, and thus no claim that she lacks statutory standing, *see* § 502(a)(3) (permitting requests for injunctions and other equitable relief to be brought by participants, beneficiaries, and fiduciaries), the primary inquiry here is whether Horvath has pled "a violation of [her] ERISA-created rights sufficient to satisfy Article III's injury requirement." *Financial Inst. Retirement Fund v. Office of Thrift Supervision*, 964 F.2d 142, 147 (2d Cir. 1992).

In addressing this question, we note that Horvath's suit seeks to utilize the enforcement provisions contained in § 502(a)(3), 29 U.S.C. § 1132(a)(3), in order to remedy an alleged violation of the fiduciary duties imposed by § 404, 29 U.S.C. § 1104. Pursuant to the terms of § 502(a)(3), Horvath is entitled only to equitable relief, *see Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209-10, 122 S. Ct. 708, 712, 151 L. Ed.2d 635 (2002), which she

seeks in the form of requests for restitution, disgorgement, and an injunction barring Keystone from continuing to omit information regarding physician incentives from its disclosures to plan members. For the reasons stated below, we conclude that Horvath has established a case or controversy as to her request for injunctive relief but has failed to do so with respect to her requests for restitution and disgorgement.

First, with regard to injunctive relief, it is well-established that "[t]he actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *RJG Cab, Inc. v. Hodel*, 797 F.2d 111, 118 (3d Cir. 1986) (quoting *Warth*, 422 U.S. at 499-500, 95 S. Ct. at 2205-06) (internal quotations omitted); *see also Kirby v. Department of Hous. & Urban Dev.*, 675 F.2d 60, 65 (3d Cir. 1982). Here, the disclosure requirements and fiduciary duties contained in ERISA create in Horvath certain rights, including the rights to receive particular information and to have Keystone act in a fiduciary capacity. Thus, Horvath need not demonstrate actual harm in order to have standing to seek injunctive relief requiring that Keystone satisfy its statutorily-created disclosure or fiduciary responsibilities. *See Gillis v. Hoechst Celanese Corp.*, 4 F.3d 1137, 1148 (3d Cir. 1993) (finding "ERISA does not require that harm be shown before a plan participant is entitled to an injunction ordering the plan administrator to comply with ERISA's reporting and disclosure requirements"); *see also Larson v. Northrop Corp.*, 21 F.3d 1164, 1171 (D.C. Cir. 1994) (holding plaintiff need not demonstrate actual harm in order to file suit for alleged breach of fiduciary duty under ERISA § 404); *Financial Inst. Retirement Fund*, 964 F.2d at 149 (noting that "ERISA's goal of deterring fiduciary misdeeds" supports a "broad view of participant standing under ERISA," and holding that a violation of § 404 satisfies the injury requirement of Article III). As noted in *Gillis*, this conclusion is further supported "by the Supreme Court's statement that 'Congress' purpose in enacting the ERISA disclosure provisions [was to] ensur[e] that the individual participant knows exactly where he stands with respect to the plan.' " 4 F.3d at 1148 (quoting *Firestone Tire & Rubber*

*Co. v. Bruch*, 489 U.S. 101, 118, 109 S. Ct. 948, 958, 103 L. Ed.2d 80 (1989)).

However, the same cannot be said regarding Horvath's requests for restitution and disgorgement, both of which are individual in nature and therefore require her to demonstrate individual loss. *See In re Unisys Sav. Plan Litig.*, 173 F.3d 145, 159 (3d Cir. 1999) (citing *Varity Corp. v. Howe*, 516 U.S. 489, 507-15, 116 S. Ct. 1065, 134 L. Ed.2d 130 (1996)). Because she concedes that the care and coverage she received as a member of the Keystone HMO was never affected by the existence of physician incentives, Horvath's claim for individual loss, to the extent she has one at all, is premised on her argument that her firm overpaid for the healthcare she received.

We recently rejected a nearly identical claim in *Maio v. Aetna, Inc.*, 221 F.3d 472 (3d Cir. 2000), albeit outside the context of ERISA. As in this case, the defendant HMO in *Maio* utilized a financial incentive structure designed to encourage physicians to ration medical care in a cost-effective manner. 221 F.3d at 475. The plaintiffs, a putative class consisting of current and former members of the HMO, filed suit alleging that they were induced to enroll in the healthcare plan as a result of the HMO's claims regarding the quality of its medical care but that they did not receive that level of care because undisclosed financial incentives impacted medical determinations made by the HMO's physicians. *Id.* at 474-75.

Because plaintiffs sought relief pursuant to the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, *et seq.*, the sole issue before us in *Maio* was whether plaintiffs had, by use of this "diminished value" theory, "alleged a valid RICO injury to business or property sufficient to afford them standing under RICO" to assert their claim. 221 F.3d at 482. We concluded that their allegations failed to satisfy the statutory injury requirements of RICO and that they therefore lacked standing to sue. *Id.* at 501. Specifically, we held that they could not "establish that they suffered a tangible economic harm compensable under RICO unless they allege that health care they received under [insurer's] plan actually was compromised or diminished as a result of [insurer's]

management decisions challenged in the complaint." *Id.* at 488.

Although the narrow scope of the issue presented in *Maio* distinguishes that case from the instant ERISA action, our observations regarding the viability of the diminished value theory are nevertheless instructive. *See Doe v. Blue Cross Blue Shield of Md., Inc.*, 173 F. Supp.2d 398, 403-05 (D. Md. 2001) (utilizing *Maio* to analyze plaintiff's standing to assert diminished value theory under ERISA).

Moreover, proving diminished value claims is problematic, as doing so necessarily requires a determination of the value of the insurance provided by the HMO. 221 F.3d at 499. This value inquiry, in turn, inappropriately transforms juries into quasi-regulatory commissions by requiring them to decipher complex rate structures in order to determine whether, and to what extent, HMO plan members overpaid for the insurance they received. *Id.* Further, Horvath's claims for restitution and disgorgement rest not only on the troublesome assumption that a factfinder can accurately determine the amount her firm allegedly overpaid Keystone, but also on the notion that the firm would have passed these savings on to its employees in the form of a higher salary or additional benefits. We find this reasoning far too speculative to serve as the basis for a claim of individual loss and thus conclude that Horvath lacks standing to seek restitution or disgorgement. *See Doe*, 173 F. Supp.2d at 404-05 (noting that no court has yet found standing to assert diminished value claims under ERISA, and that the reticulated nature of ERISA discourages the creation of new causes of action).[3]

---

3. Although we need not decide the issue in light of our conclusion regarding standing, we note that, even if she had standing to assert them, Horvath's claims for restitution and disgorgement are likely barred by the Supreme Court's recent decision in *Great-West*. As noted above, ERISA § 502(a)(3) provides only for equitable relief. In *Great-West*, the Court, noting that not all claims for restitution are equitable in nature, held that not all such claims are cognizable under § 502(a)(3). *See Great-West*, 534 U.S. at 215, 122 S. Ct. at 715 (holding that whether a claim for restitution "is legal or equitable in a particular case (and hence whether it is authorized by § 502(a)(3)) remains dependent on the nature of the relief sought").

### C. *Horvath's Rule 56(f) Motion*

We begin our analysis of Horvath's remaining claim for injunctive relief by examining her assertion that the District Court abused its discretion by failing to address her Rule 56(f) motion prior to ruling on Keystone's motion for summary judgment.[4] Specifically, she contends that the affidavits submitted in connection with her motion adequately described both the additional discovery sought and the way in which it would assist her in establishing her claim. She further argues that the requested information, if obtained, would clarify the extent to which the incentive program at issue limits the scope of coverage received by members of the Keystone HMO.

Keystone responds that the District Court's implicit denial of Horvath's Rule 56(f) motion was proper because

---

Historically, "[i]n cases in which the plaintiff could *not* assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him, the plaintiff had a right to restitution *at law* through an action derived from the common law writ of assumpsit." *Id.* at 213, 122 S. Ct. at 714 (citation and internal quotations omitted). "In contrast, a plaintiff could seek restitution *in equity*, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.* Thus, in order "for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Id.* at 214, 122 S. Ct. at 714-15.

Here, there are no funds readily traceable to Horvath over which a constructive trust or other equitable remedy may be imposed. Indeed, as described above, it is questionable whether it is even possible to identify an exact amount, assuming Horvath could prove entitlement to any amount at all. Accordingly, even if she had standing to assert them, Horvath's requests for restitution and disgorgement arguably constitute legal remedies not recoverable under § 502(a)(3).

4. Horvath additionally claims that the District Court abused its discretion by denying her request to allow her expert to review certain confidential documents. Because this claim was not properly preserved for appellate review, we do not address it here.

the motion simply repeated the discovery requests already rejected by the court in its denials of her two prior motions to compel, neither of which have been appealed by Horvath. Keystone further contends that the affidavits submitted by Horvath's counsel and by Dr. Klionsky in support of the Rule 56(f) motion failed to identify facts that would preclude the entry of summary judgment, and that Dr. Klionsky's testimony is barred from proper consideration because Horvath failed to make the required expert disclosures prior to submitting his affidavit.

As noted above, we review the District Court's determination not to delay its summary judgment ruling for abuse of discretion. *St. Surin*, 21 F.3d at 1313. A district court's decision to grant a Rule 56(f) motion "depends, in part, on 'what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained.'" *Contractors Ass'n of Eastern Pa., Inc. v. City of Phila.*, 945 F.2d 1260, 1266 (3d Cir. 1991) (quoting *Lunderstadt v. Colafella*, 885 F.2d 66, 71 (3d Cir. 1989)). However, because "[a] district court has discretion in acting on Rule 56(f) motions," this list of factors is not exhaustive. *Id.* at 1267. Instead, it "simply offer[s] a guide for the district court to follow in exercising its discretion under Rule 56(f)," *id.*, and therefore provides the general framework for our inquiry as well.

In addressing the first factor — an analysis of the information sought — we examine the substance of the Rule 56(f) affidavit. *Id.* at 1266. Here, Horvath concedes that all of the discovery described in Dr. Klionsky's affidavit had previously been sought in the two motions to compel denied by the District Court. In this sense, the Rule 56(f) motion sought no new discovery, and essentially amounted to nothing more than a motion for reconsideration of the District Court's denial of the two prior motions to compel.

With respect to the second factor, we examine whether the requested information would have altered the outcome of the District Court's summary judgment determination. *Contractors Ass'n of Eastern Pa.*, 945 F.2d at 1266. As discussed in more detail below, neither applicable case law nor the text of ERISA required disclosure of the scope of Keystone's physician incentive structure under the facts

presented in this case. Accordingly, none of the information described in the affidavits would have precluded the District Court's entry of summary judgment in favor of Keystone.

Finally, we assess "why the party seeking more time has not previously obtained the information." *Id.* at 1267. Here, Horvath's initial motion to compel was denied without prejudice, and she was given the opportunity to submit more narrowly tailored document requests. She failed to do so. The District Court therefore acted properly in denying her second motion to compel. For the above reasons, the District Court did not abuse its discretion in electing not to grant Horvath's Rule 56(f) motion.[5]

### D. The Nature of Horvath's Claim

In asserting that the District Court erred in granting summary judgment to Keystone, Horvath's counsel struggled mightily, both in their briefs and at oral argument, to persuade us that her breach of fiduciary duty claim is based on allegations of affirmative misrepresentation rather than on a failure to disclose material facts. In so doing, they harshly criticized the District Court for failing to address the misrepresentation issue and argued that it misconstrued the true essence of her claim.

We reject this argument, which fails at the most basic level because it finds no support in the plain language of Horvath's complaint. Rather, an analysis of the text of the complaint reveals that the ERISA fiduciary duty claim, which is the only count asserted therein, is clearly premised on Keystone's alleged failure to disclose material information. *See, e.g.*, Compl. at ¶ 36 ("Keystone breaches its fiduciary duty to plaintiff and the class by failing to fully and accurately disclose the material facts [regarding

---

5. Because the three factors outlined in Contractors Ass'n of Eastern Pa. provide ample grounds for affirming the District Court's decision not to delay its summary judgment ruling, we need not consider additional factors. Similarly, because we conclude that Horvath's Rule 56(f) motion fails even with the aid of Dr. Klionsky's affidavit, we do not address Keystone's argument that Horvath failed to make the required expert disclosures with respect thereto.

physician incentives]"); *id.* at ¶ 37 ("Keystone is liable to make restitution to plaintiff and each other member of the Class for an amount by which plaintiffs over paid [sic] Keystone because of Keystone's failure to disclose the above-described material facts"); *id.* at ¶ 38 ("As a result of defendant's breaches of fiduciary duty, Keystone is also liable to disgorge the amounts by which it was unjustly enriched as a result of its failure to disclose the material facts set forth above regarding the true nature of the health insurance it sold to plaintiff and the members of the class").

Moreover, a misrepresentation-based breach of fiduciary duty claim cannot, as Horvath argues, be implied from a fair reading of her complaint. In order to state a claim for misrepresentation by an ERISA fiduciary, Horvath must allege (1) that Keystone was acting as a fiduciary, (2) that Keystone made a misrepresentation, (3) that the misrepresentation was material, and (4) that Horvath relied on the misrepresentation to her detriment. *See Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 73 (3d Cir. 2001). Although Horvath satisfies the first element listed above,[6] there is no reasonable reading of her complaint — even under the liberal pleading requirements contained in Rule 8 of the Federal Rules of Civil Procedure — pursuant to which Horvath can be said to have alleged a material misrepresentation by Keystone upon which she relied to her detriment.[7]

---

6. See footnote 2 supra.

7. Indeed, nowhere in the complaint does Horvath use the term "misrepresent" or any variation thereof. Instead, the primary basis for her assertion that her complaint may be read to state a misrepresentation-based breach of fiduciary duty claim is her allegation that the plan documents distributed by Keystone "uniformly represent or imply that the primary care physician's gatekeeper function will be exercised by each primary care physician on the basis of that physician's independent medical judgment, and that the medical care recommended or prescribed for each member by that member's primary care physician will be consistent with his or her physician's independent medical judgment." Specifically, she argues that, in light of her accompanying assertion that the existence of financial incentives may potentially cause physicians to prescribe less care than called for by their independent professional judgment, the representation described above must be false.

Accordingly, having carefully reviewed the complaint, we conclude that the breach of fiduciary duty claim presented to the District Court was premised on Keystone's alleged failure to disclose material information. If Horvath desired to change her theory of the case subsequent to her initial filing, she could have sought leave to amend her complaint, which is liberally granted when appropriate. *See In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 863 (3d Cir. 1990) (citing Fed. R. Civ. P. 15(a)). Having failed to do so, she will not now be heard to argue that the District Court erred by ruling on the only claim properly before it.[8]

---

We disagree. Contrary to Horvath's assertion, the mere existence of financial incentives does not, *ipso facto*, render false Keystone's representation that its physicians will recommend treatment that is consistent with their independent medical judgment. *Cf. Pegram*, 530 U.S. at 219, 120 S. Ct. at 2149 (noting that a physician's "professional obligation to provide covered services with a reasonable degree of skill and judgment in the patient's interest" serves as a check on the influence of financial incentives). Accordingly, the incompatibility between the existence of financial incentives and the rendering of competent medical care, suggested by Horvath, has not been demonstrated.

Furthermore, because this case comes to us on her appeal of the District Court's grant of summary judgment to Keystone, Horvath must prove not only that she has successfully stated a misrepresentation-based claim for breach of fiduciary duty, but also that there is sufficient evidence to create a triable issue as to this claim. She has clearly failed to do so. *See Horvath*, 2002 WL 265023, at *6 (noting the lack of support for Horvath's assertions "that physician incentives cause doctors to prescribe less care than is medically necessary," or "that physicians' financial interests eclipse their professional obligation to provide competent care or causes physicians to abandon their independent medical judgment, forego directing patients to specialists or fail to prescribe medical[ly] necessary treatments, tests or hospitalizations, for the purpose of receiving a larger bonus payment from their managed health care organization"). We therefore reject Horvath's argument that the juxtaposition of independent medical judgment and financial incentives, as stated in her complaint, provides sufficient support for a claim that Keystone breached its fiduciary duty by making a material misrepresentation.

8. In light of this conclusion, our analysis of Horvath's claim is not, as she contends, governed by *Varity Corp. v. Howe*, 516 U.S. 489, 116 S.

### E. Duty of Disclosure Under ERISA

We turn now to the issue at the core of the District Court's summary judgment decision, the question whether ERISA required Keystone to disclose the details of its physician incentive structure under the facts of this case. In concluding that no such duty exists, the District Court relied primarily upon our decisions in *Bixler v. Central Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292 (3d Cir. 1993), *Glaziers & Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Sec., Inc.*, 93 F.3d 1171 (3d Cir. 1996), and *Jordan v. Federal Express Corp.*, 116 F.3d 1005 (3d Cir. 1997), all of which address the extent to which the fiduciary duty requirements contained in ERISA § 404 may affect an ERISA fiduciary's disclosure responsibilities.

In *Bixler*, we recognized the existence of an individual cause of action for breach of fiduciary duty under ERISA. Lucinda Bixler, the widow of an ERISA plan beneficiary, sought recovery of her late husband's medical expenses and death benefits. 12 F.3d at 1296. Specifically, she alleged that both her husband's employer and the fund administering his plan made material misrepresentations that led her to elect not to renew her family's healthcare coverage pursuant to the Consolidated Omnibus Budget Reconciliation Act (COBRA), 29 U.S.C. §§ 1161-1168. *Id.* The District Court granted summary judgment to both defendants based on its belief that ERISA did not permit individuals to assert claims for breach of fiduciary duty.

We reversed, holding that § 404(a), which details the duties of fiduciaries, must be read in conjunction with § 502(a)(3), which "authorizes the award of 'appropriate equitable relief' *directly* to a participant or beneficiary to redress any act or practice which violates the provisions of ERISA." 12 F.3d at 1299. We concluded that Lucinda Bixler's requests for information, coupled with the fiduciary's understanding of her status and situation,

---

Ct. 1065, 134 L. Ed.2d 130 (1996). The Supreme Court's opinion in that case dealt primarily with the issue of misrepresentation, and expressly declined to address "the question whether ERISA fiduciaries have any fiduciary duty to disclose truthful information on their own initiative, or in response to employee inquiries." *Id.* at 506, 116 S. Ct. at 1075.

imposed a duty to accurately convey all information relevant to her circumstances. *Id.* at 1300 (citing *Eddy v. Colonial Life Ins. Co.*, 919 F.2d 747 (D.C. Cir. 1990)).

In *Glaziers*, we noted that a request for information by a beneficiary, such as the one that occurred in *Bixler*, is not a "condition precedent" to the imposition of a fiduciary duty to disclose under ERISA. 93 F.3d at 1181. Rather, we concluded that, in certain circumstances, the knowledge of the fiduciary may give rise to such a duty even in the absence of a specific request by the beneficiary because "absent such information, the beneficiary may have no reason to suspect that it should make inquiry into what may appear to be a routine matter." *Id.* The defendant in *Glaziers* was a brokerage firm which failed to disclose to plaintiffs that the broker managing their funds resigned from the firm under questionable circumstances. Plaintiffs subsequently transferred their accounts to a new firm established by the departing broker, who later stole a substantial amount of money from them. Plaintiffs then sought recovery from the defendant brokerage firm on the basis of its failure to disclose the circumstances surrounding the broker's departure.

We held that a fiduciary has a legal duty to disclose to the beneficiary those material facts, known to the fiduciary but unknown to the beneficiary, which the beneficiary must know for its own protection. *Id.* at 1182.

Finally, in *Jordan*, we applied the definition of materiality, utilized in our misrepresentation cases, to a claim for failure to disclose under § 404. We concluded that such a failure was material "if 'there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed retirement decision.'" *Jordan*, 116 F.3d at 1015-16 (quoting *In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 57 F.3d 1255, 1264 n.18 (3d Cir. 1995)). In *Jordan*, the plaintiff claimed a breach of fiduciary duty based on his employer's failure to disclose to plaintiff that his decision to designate his wife as joint annuitant on his retirement plan would become irrevocable once he retired. Although the plaintiff failed to inquire as to this issue, we held this failure excusable in light of the fact that plaintiff had previously been permitted

to change his retirement plan options freely and had received a letter discussing his retirement options which expressly stated that he would be permitted to revoke his pension plan election following retirement but failed to disclose his inability to similarly alter his annuity election. *Id.* at 1017.

In applying these decisions to the case at bar, the District Court concluded that Horvath failed to create any issues of material fact with respect to her claim because (1) she failed to request the information Keystone offered to make available regarding its methods of physician compensation, *see Bixler*; (2) there was no set of circumstances pursuant to which Keystone should have known that such information was necessary to prevent Horvath from making a harmful decision regarding her healthcare coverage, *see Glaziers*; and (3) she failed to explain how the information at issue was material in light of the fact that her employer offers no other options for healthcare coverage, *see Jordan*.

We agree with this analysis. Further, we note, as the District Court did, that Horvath's claim is indistinguishable from the one rejected by the Fifth Circuit Court of Appeals in *Ehlmann v. Kaiser Found. Health Plan of Tex.*, 198 F.3d 552 (5th Cir.), *cert. dismissed*, 530 U.S. 1291 (2000), where it declined to add physicians' reimbursement plans to the list of specific disclosure requirements already included in ERISA by Congress.[9] Moreover, to the extent that our

9. We note that several district courts have employed similar logic in dispensing with the type of claim asserted here. *See, e.g.*, *In re Managed Care Litig.*, 150 F. Supp.2d 1330, 1356 & n.22 (S.D. Fla. 2001) (finding no duty to disclose financial incentives because applicable case law does not require such disclosure "absent a request for information or special circumstances"); *Weiss v. Cigna Healthcare, Inc.*, 972 F. Supp. 748, 754 (S.D.N.Y. 1997) ("Had Congress seen fit to require the affirmative disclosure of physician compensation arrangements, it could certainly have done so in ERISA §§ 101-111. The general fiduciary obligations set forth in ERISA § 404 do not refer to the disclosure of information to Plan participants, and it would be inappropriate to infer an unlimited disclosure obligation on the basis of general provisions that say nothing about such duties.") (internal citations and quotations omitted); *see also Peterson v. Connecticut Gen. Life Ins. Co.*, No. CIV. A. 00-CV-605, 2000 WL 1708787, at *7 & n.5 (E.D. Pa. Nov. 15, 2000) (discussing *Shea* and *Ehlmann*, and refusing to impose a blanket duty to disclose physician incentives in the absence of clear direction from this Court).

conclusion is inconsistent with the position taken by the Eighth Circuit Court of Appeals in *Shea v. Esensten*, 107 F.3d 625 (8th Cir. 1997), we are not bound by *Shea*.[10]

In conclusion, therefore, we hold that ERISA imposes no duty on Keystone to disclose information regarding its physician incentives absent a request for such information by Horvath, absent circumstances which put Keystone on notice that Horvath needed such information to prevent her from making a harmful decision with respect to her healthcare coverage, and absent any evidence that Horvath was harmed as a result of not having such information disclosed to her.[11] Horvath's claim therefore fails as a matter of law.

---

10. In *Shea*, the plaintiff was the widow of Patrick Shea, an ERISA plan beneficiary who previously had been hospitalized with severe chest pains. *Id.* at 626-27. He later visited his HMO physician after again experiencing indications of heart trouble. *Id.* at 626. Even after Shea disclosed his family's history of heart disease and offered to personally pay for a visit to a cardiologist, the HMO physician sent him home without referring him to a specialist, and without disclosing the existence of a physician incentive structure that discouraged such referrals. Shea died shortly thereafter as a result of heart failure. *Id.* Citing our requirement that a fiduciary must speak if it "knows that silence might be harmful," *Bixler*, 12 F.3d at 1300, the court held that a duty to disclose the existence of the physician incentives was triggered under the circumstances of that case. 107 F.3d at 629. *But see* footnote 11 *infra*.

11. Horvath's primary concern — that the existence of financial incentives might harm plan members by causing some physicians to place their own self-interest above their professional obligation to provide competent healthcare — does not mandate disclosure here. We note, however, that our ruling in no way leaves plan members, who have suffered harm, without a remedy. The Supreme Court's decision in Pegram would in no way preclude a claim by an HMO patient that the existence of financial incentives caused inadequate medical care to be provided, resulting in injury to the patient. "Treatment" or "quality of care" decisions are not preempted by ERISA and therefore could be brought as a state court medical malpractice action. *See Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 273 (3d Cir. 2001); *Lazorko v. Pennsylvania Hosp.*, 237 F.3d 242, 249-51 (3d Cir. 2000), *cert. denied*, 533 U.S. 930, 121 S. Ct. 2552, 150 L. Ed.2d 719.

## V.  Conclusion

For the reasons stated above, we will affirm the final judgment of the District Court.

A True Copy:
      Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*