

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-27-2006

# Bates v. Tandy Corporation

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3851

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Bates v. Tandy Corporation" (2006). *2006 Decisions*. Paper 831.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/831

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-3851

_____

JOHNNIE BATES; OVERSTONE CUMMINGS;
TODD PAYNE, ON THEIR OWN BEHALF AND
ALL OTHERS SIMILARLY SITUATED,

Appellants

v.

TANDY CORPORATION, d/b/a and
a/k/a Radio Shack

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 03-cv-05519)
District Judge: Honorable Robert F. Kelly

_____

Submitted Under Third Circuit LAR 34.1(a)
June 9, 2006

Before: AMBRO, FUENTES and NYGAARD, <u>Circuit Judges</u>

(filed: June 27, 2006 )

_____

OPINION

_____

AMBRO, <u>Circuit Judge</u>

Overstone Cummings, Todd Payne and Johnnie Bates appeal from the District Court's grant of summary judgment for Tandy Corporation ("RadioShack").[1] Appellants brought suit under Title VII of the Civil Rights Act and 42 U.S.C. § 1981, alleging that RadioShack improperly places African-American managers in stores in less affluent communities with lower volume sales and does not promote African-Americans to managerial positions above the store manager level. They contend both that the District Court abused its discretion in deciding RadioShack's summary judgment motion without first allowing additional discovery, and that, even without additional discovery, the facts in the record do not justify deciding the motion in RadioShack's favor. For the reasons stated below, we affirm the District Court's order.

## I. Factual and Procedural History

As we write for the parties, only a brief summary of pertinent facts is necessary. Cummings, Payne, and Bates are Philadelphia-area employees of RadioShack. Cummings was hired as a sales associate at RadioShack's Cherry Hill Mall store in 1986. He quickly earned a promotion and managed several stores before returning to the Cherry Hill Mall store (one of the largest in the district) as manager. After it was reported that there was a $20,000 discrepancy in inventory at this store, he was terminated, then

---

[1] In 2000, Tandy Corporation changed its name to RadioShack Corporation, and all appellants were employed at RadioShack stores.

reinstated as a sales associate at another store pending an investigation. When the investigation vindicated him, he was again promoted and managed several stores before returning to the Cherry Hill Mall store in 1998, which has over one million dollars in sales. He continues to manage that store.

Payne joined RadioShack in 1989 as a sales associate and, after an unsuccessful stint as a store manager, he was once again promoted to manager in 1993 and assigned to the Wenonah store with a sales volume around $500,000. In 1996, he was transferred to the Plymouth Meeting Mall store, which generally averaged between $700,000 and $800,000 in sales, but which was undergoing renovations at the time (thus affecting its sales figures).

In 2001, Payne applied to manage the Moorestown Mall Store, which has over $1,000,000 in sales volume. After comparing the candidates using RadioShack's Performance Scorecard (which ranks managers according to various quantitative criteria), the district manager, Bruce Teufel, selected another candidate who was ranked first out of 26 in the district (Payne was ranked 18th). Payne applied for the same position again in 2002. This time, although his store's performance had not improved, Payne was the highest-rated applicant in his district. Due to his lack of improvement, however, Teufel sought a candidate from an adjacent district, ultimately hiring an individual who was ranked 168th out of 267 managers in the Philadelphia region compared to Payne's

3

ranking of 208th. By 2003, Payne's performance data had improved significantly and he was finally selected to manage the Moorestown Mall Store, where he remains as manager.

Bates began working as a sales associate at a RadioShack store in 1996, and became manager of the Flourtown store (which had a sales volume of $600,000) in 1997. His performance score was low, and he was demoted to the Horsham store, which had a sales volume of $400,000. By 2000 his performance improved and he was promoted to the Warminster store, which had a sales volume of $600,000. In 2001, he decided to step down from his store manager position, taking a part-time sales associate position in the Cherry Hill Mall store while pursuing another career.

Appellants filed suit in the District Court in October 2003, and RadioShack moved for summary judgment in May 2005. Appellants contend that, at that time, they had not yet conducted discovery relating to the merits of their individual claims, but had instead limited themselves to issues of class certification. RadioShack denies there was an understanding between the parties to conduct discovery on a bifurcated schedule, pointing to the fact that it did not limit its discovery to the issue of certification but (among other things) deposed appellants on the merits of their claims. The District Court conceded that "through oversight by both the Court and the parties" no scheduling order was entered, and noted that correspondence between the parties on this matter was inconclusive. Ultimately, however, the Court entered summary judgment for RadioShack, describing the proceedings as "already protracted" and concluding that "[t]he record is sufficient to

4

make a determination on the [summary judgment] motion."

## II.  Jurisdiction and Standard of Review

The District Court had subject matter jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction over the appeal under 28 U.S.C. § 1291.

The District Court's decision to refuse additional discovery before granting summary judgment is reviewed for abuse of discretion.  *Bradley v. United States*, 299 F.3d 197, 206 (3d Cir. 2002).  Whether the District Court erred in granting summary judgment is subject to plenary review.  *Doe v. County of Centre*, 242 F.3d 437, 446 (3d Cir. 2001).  In considering this question, we apply the same standard as the District Court, asking whether there are any genuine issues of material fact such that a reasonable jury could find for the plaintiffs.  *Id.* (citing Fed. R. Civ. P. 56(c)).

## III.  Analysis

A.    *Discovery*

Appellants contend that the District Court abused its discretion when it decided RadioShack's motion for summary judgment before allowing for additional discovery.  *See* Fed. R. Civ. P. 56(f) ("Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit . . . discovery to be had . . . .").

5

Appellants, however, never formally filed a Rule 56(f) motion. "This circuit generally requires that a party file a Rule 56(f) affidavit in order to preserve the issue for appeal." *Radich v. Goode*, 866 F.2d 1391, 1393 (3d Cir. 1989); *see Bradley*, 299 F.3d at 206-07 (same). Appellants urge that their brief in opposition to RadioShack's motion for summary judgment, which included a discussion of the purported inadequacy of the discovery process, be taken as the functional equivalent of a Rule 56(f) motion. Our Court, however, employs a "strong presumption against a finding of constructive compliance with Rule 56(f)." *Bradley*, 299 F.3d at 207.[2]

Ultimately, however, we do not need to decide the issue of constructive compliance. Even if the appellants submitted the equivalent of a Rule 56(f) motion, there is no basis for concluding that the District Court abused its discretion in implicitly denying it. First, our Court generally denies relief under Rule 56(f) if the purported inadequacy of the record is attributable to the movant's own failure to take advantage of the discovery period, rather than the other party's lack of cooperation. *See Lunderstadt v. Colafella*, 885 F.2d 66, 71-72 (3d Cir. 1989). Here, almost a year and a half passed between the opening of the discovery period and RadioShack's motion for summary

---

[2] In *Miller v. Beneficial Management Corp.*, we did rule that the District Court had prematurely granted the defendant summary judgment despite the fact that a Rule 56(f) affidavit was never filed by the plaintiff. 977 F.2d 834, 846 (3d Cir. 1992). The basis for making an exception in that case, however, was that the plaintiffs relied detrimentally on the Magistrate Judge's order waiving the Rule 56(f) affidavit requirement. *Id. See Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 511 n.4 (3d Cir. 1994) (limiting the applicability of *Miller* to those facts). Nothing like that occurred here.

6

judgment. Moreover, appellants' main outstanding request is for an opportunity to depose Bruce Teufel (the district manager), someone with whom they twice scheduled and cancelled depositions.

Second, appellants cannot establish that the information they seek would, if uncovered, preclude summary judgment, as they must do to prevail on a Rule 56(f) motion. *Horvath v. Keystone Health Plan East, Inc.*, 333 F.3d 450, 458 (3d Cir. 2003). As discussed below, the District Court correctly based its grant of summary judgment on two undisputed facts: (1) RadioShack's decisions to transfer appellants were dictated by objective performance scorecards; and (2) appellants never applied for the promotions that form the basis of their failure to promote claim. Nothing that might emerge from further discovery could cast doubt on either of these facts.

Thus, in light of appellants' own culpability for failing to complete discovery, and their inability to establish that the discovery they seek would be material to the issues raised in the summary judgment motion, the District Court properly refused to delay consideration of RadioShack's motion.

B. *Employment Discrimination*

Under Title VII, an aggrieved employee must file a charge of discrimination with the Equal Employment Opportunity Commission within 180 days of the adverse employment action. 42 U.S.C. § 2000e-5(e)(1). Under 42 U.S.C. § 1981, an action for race discrimination must be brought within four years of the treatment alleged to be

7

discriminatory. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004) (citing 28 U.S.C. § 1658(a)). Thus, appellants are barred from bringing employment discrimination claims stemming from events prior to October 1999. That leaves only the claims relating to: (1) Payne's inability to obtain a transfer to the more successful Moorestown Mall store in 2001 and 2002; (2) Bates' transfer to the less successful Horsham store in 1999; and (3) Cummings' and Payne's respective failures to be promoted to the position of district manager during the four-year statutory period.[3]

The same elements of proof are necessary to establish employment discrimination under Title VII and § 1981. *Schurr v. Resorts Int'l Hotel, Inc.*, 196 F.3d 486, 499 (3d Cir. 1999). Because appellants have not introduced any direct evidence of discrimination, we evaluate their claims under the familiar burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Appellants first bear the burden of establishing a *prima facie* case of racial discrimination. Once they have done so, the burden shifts to the employer to present a legitimate, non-discriminatory reason for its decision. If that burden has been met, appellants must demonstrate that the proffered business reason is pretextual. *Id.* at 802-04.

1.      Transfer

RadioShack concedes that Payne and Bates have made out their *prima facie* case of employment discrimination with respect to their store assignments. In response, it

---

[3] Bates was not eligible for a district manager position during this period.

offers the same business reason for each decision: the employee's score on its performance scorecard system. Payne was not promoted to manager of the Moorestown Mall store in 2001 and 2002 because of his relatively low score, and Bates was demoted to the Horsham store in 1999 because of his similarly low ranking. The District Court granted summary judgment on this issue based on its finding that Payne and Bates could not demonstrate that RadioShack's reliance on its performance scorecards was a pretext for discrimination.

Payne and Bates argue that the District Court erred in not evaluating RadioShack's use of its scorecards in light of the company's overall environment of racial animus and the low numbers of African-Americans occupying upper management positions. They contend that, taking this broader context into account, a factfinder could reasonably conclude that RadioShack uses its seemingly objective scoring system in a discriminatory fashion, either by manipulating the candidate pool so as to avoid a situation in which an African-American candidate has the highest score or by systematically placing African-American managers in underperforming stores in order to keep their scores artificially low.

We find this argument unpersuasive. That Payne and Bates each received favorable employment decisions as soon as their scores improved blocks any reasonable inference that their scores were not the real reason behind prior adverse decisions, or that the scoring system was used in a manipulative fashion to deny them promotions because

9

of their race. "[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that . . . the employer's proffered non-discriminatory reason[ ] . . . was either a *post hoc* fabrication or otherwise did not actually motivate the employment action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). Payne and Bates cannot meet this burden. Thus, the District Court acted correctly in granting summary judgment to RadioShack on this issue.

2.      Failure to Promote

To make their *prima facie* failure to promote case, Cummings and Payne must establish that: (1) they belong to a protected category; (2) they applied for and were qualified for a job in an available position; (3) they were rejected; and (4) after they were rejected, the position stayed open and the employer continued to seek applications from similarly qualified individuals. *Bray v. Marriot Hotels*, 110 F.3d 986, 990 (3d Cir. 1997). The District Court concluded that Cummings and Payne failed the second and third prongs of the test, because neither applied for a district manager position. In fact, both declined invitations to attend annual open houses for the district manager training program, which is the first step in the application process.

Cummings and Payne argue that the District Court erred in treating as dispositive their failure to apply for promotions. First, they contend they were not required to apply for the promotions because doing so would have been futile, given the company's history

10

of discriminatory hiring. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 365-66 (1977) ("When a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture he is as much a victim of discrimination as he who goes through the motions of submitting an application.") We believe *International Brotherhood* is clearly distinguishable. There, it was already established that employees who had applied for promotions were denied because of their race. The question was simply whether those who had been discouraged from applying for promotions because of that history would be allowed to piggyback on the employment discrimination claims of those who did apply. *Id.* at 363-64. Here, Cummings and Payne have no comparable basis for establishing that they would not have received the promotions had they applied for them. Thus, they cannot be relieved of the precondition that they apply for a position before bringing a claim based on not receiving it.

Second, Cummings and Payne contend that their failure to apply for district manager positions is irrelevant because RadioShack does not, in fact, fill district manager vacancies through a formal application process; rather, candidates must receive a recommendation from their district manager in order to obtain the promotion. A review of the record, however, undercuts this assertion. Cummings and Payne were clearly eligible, even without a recommendation from their district manager, to apply for manager training school, which is the first step in the process of becoming a district manager. It is true that, at that point, the company would have solicited the opinion of the

11

district manager.  But receiving such a recommendation is not a prerequisite for attending manager training school.  Therefore, since they never reached the recommendation stage of the application process, there is no need for additional factfinding to discover why they were never recommended for district manager positions.

The District Court, then, was correct in finding that Cummings and Payne cannot state a *prima facie* case of failure to promote.

\*   \*   \*   \*   \*

For the reasons stated above, we affirm the District Court's grant of summary judgment to RadioShack.

12