

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-10-2006

# Leuthner v. Blue Cross NE PA

Precedential or Non-Precedential: Precedential

Docket No. 04-4389

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Leuthner v. Blue Cross NE PA" (2006). *2006 Decisions.* Paper 668.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/668

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-4389
_____

FRANK W. LEUTHNER;
WILLIAM REASNER,
AND ALL OTHERS SIMILARLY SITUATED

ELIZABETH MELLEY; JEAN MIKULIS,

Intervenor-Plaintiffs in District Court

v.

BLUE CROSS AND BLUE SHIELD OF
NORTHEASTERN PENNSYLVANIA

Elizabeth Melley and Jean Mikulis,

Appellants

_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 02-cv-01709)
District Judge:  Honorable John E. Jones, III
_____

Argued on September 22, 2005

Before:  MCKEE, FISHER and ROTH,[*] <u>Circuit Judges</u>

(Opinion filed   July 10, 2006  )

Clifford A. Rieders, Esquire **(ARGUED)**
Rieders, Teavis, Humphrey, Harris
Wates & Waffenschmidt
161 West Third Street
P.O. Box 215
Williamsport, PA 17703
         Counsel for Appellant.

John F. Schultz, Esquire **(ARGUED)**
Morgan, Lewis & Bockius
1701 Market Street
Philadelphia, PA 19103

Kristofor T. Henning, Esquire
Morgan, Lewis & Bockius
1701 Market Street
Philadelphia, PA 19103
         Counsel for Appellees.

---

[*]Judge Roth assumed senior status on May 31, 2006.

# OPINION

**ROTH**, <u>Circuit Judge</u>.

If the beneficiary of an ERISA plan has lost her status as a beneficiary, due to what she claims is the plan administrator's breach of fiduciary duty, does she then have standing to sue the administrator under ERISA § 502(a), 29 U.S.C. § 1132(a)? Appellant Jean Mikulis retired early from Blue Cross, relying on what she claims was a promise from Blue Cross to provide her with 100% lifetime health benefits. Appellant Elizabeth Melley is the widow of a Blue Cross retiree. Both women lost their lifetime health benefits when the Blue Cross Plan was retroactively changed on January 1, 2001. After their benefits had been terminated, they intervened in a class action that had been brought by other Plan participants and beneficiaries to challenge the retroactive changes. The District Court dismissed Mikulis and Melley's suits under FED.R.CIV.P. 12(b)(6) for lack of statutory standing. Although appellants may have made retirement decisions based on a belief that their retirement medical benefits would continue for their lifetimes, we agree with the District Court's determination that they do not have statutory standing to bring this action. We will, therefore, affirm.

3

## I. Background

Blue Cross Blue Shield of Northeastern Pennsylvania (Blue Cross) administers the Blue Cross of Northeastern Pennsylvania Retiree Health Insurance Plan (the Plan), a welfare benefits plan for Blue Cross retirees. The Plan is subject to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, et seq. Blue Cross is a Plan fiduciary under 29 U.S.C. § 1002(21)(A).[1] Originally, the Plan provided Blue Cross retirees with 100% lifetime health insurance coverage. Blue Cross altered the Plan in 1993, and then again in 1999 and 2001. Starting in 1993, the Plan's coverage changed to a formula that provided a percentage of the cost of the health care plan, based on the number of years of service that an employee had on retirement. The formula required a minimum of 10 years of service. The formula was changed in 1999 to require a

---

[1]Congress defines a plan fiduciary as a person:
(i) [who] exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) [who] renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) [who] has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

4

minimum of 15 years of service. The 1993 and 1999 changes were applied prospectively to new retirees; the benefits of former retirees were not changed. On January 1, 2001, Blue Cross again amended the Plan (1) to provide for a graduated dollar contribution toward health insurance coverage for retirees with at least 15 years of service and (2) to eliminate coverage for surviving spouses of retirees. Blue Cross applied the 2001 Plan Amendment retroactively to all retirees.

Retired Blue Cross employees have brought a class action against Blue Cross for breach of fiduciary duty stemming from various changes made in the Plan's coverage.[2] Elizabeth Melley and Jean Mikulis are intervenors in the action. Mikulis was an employee of Blue Cross for almost 13 years. She retired at age 62 on February 27, 1993, after being notified by Blue Cross that, unless she retired by April 1, 1993, her future retirement health benefits would no longer be guaranteed at 100% lifetime but would be subject to a percentage formula based on years of employment. As a result of early retirement, Mikulis received a smaller pension from Blue Cross and reduced Social Security benefits. Mikulis received 100% benefits under the Plan until January 1, 2001, when she ceased to be eligible for any benefits under the amended Plan. She claims to have relied on having 100% lifetime health coverage in her savings and spending decisions.

Melley is the widow of a Blue Cross retiree. The record does not indicate when Melley's late husband retired from Blue

[2]The District Court has denied class certification.

Cross, what his age was at retirement, or if he had other employment thereafter. Melley received benefits under the Plan until January 1, 2001, when she ceased to be eligible for any benefits under the amended Plan.

Mikulis and Melley claim that Blue Cross knowingly made various material misrepresentations and omissions about Plan benefits and amendments. In particular, they maintain that they had no notice before the 1993 Plan amendment that Blue Cross could alter the Plan. They also allege that Blue Cross's pre-2001 practice of applying Plan changes only prospectively led them to believe that any future changes would be prospective. They further claim that they relied upon Blue Cross's misrepresentations and omissions to their detriment. Mikulis contends that, but for Blue Cross's misrepresentations and omissions, she would not have taken early retirement. Melley alleges that her late husband made retirement and insurance decisions based upon the promise of continuing lifetime health benefits for his spouse, even in the event of his death.

Mikulis and Melley brought an action under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), in which they allege that Blue Cross breached its fiduciary duties under ERISA § 404(a), 29 U.S.C. § 1104(a) by amending the plan in 2001[3] and by failing to disseminate accurate information about the terms of retiree medical benefits under the Plan. They are seeking either

_____

[3]Mikulis and Melley no longer contend that the amendment of the plan constituted a breach of fiduciary duty.

6

reinstatement in the Plan as it existed prior to the 2001 amendments, comparable coverage, or its monetary equivalent.

Blue Cross moved to dismiss pursuant to FED. R. CIV. P. 12(b)(1), 12(b)(6) and/or 56. The District Court construed the motion as a motion to dismiss under Rule 12(b)(6) because the parties' submissions did not include matters outside of the pleadings. The District Court found that Mikulis and Melley did not have standing because they were neither Plan participants nor beneficiaries at the time they commenced their suit. Accordingly, the District Court dismissed both complaints for lack of standing. The District Court certified its judgment as final under FED. R. CIV. P. 54(b). This appeal followed.

## II. Jurisdiction and Standard of Review

We undertake a plenary review of the grant of a motion to dismiss, Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250 (3d Cir. 1994), including questions of standing. Miller v. Rite Aid Corp., 334 F.3d 335, 340 (3d Cir. 2003). When considering an appeal from a dismissal pursuant to Rule 12(b)(6), we accept as true all well-pled factual allegations. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).

## III. Discussion

ERISA's statutory standing requirements provide in § 502(a)(1) and (3) that a civil action may only be brought:

7

(1) by a participant or beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. . . .

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(1), (a)(3).

The terms "participant" and "beneficiary" are defined in ERISA § 3(7)-(8):

(7) The term "participant" means any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

(8) The term "beneficiary" means a person designated by a participant, or by the terms of an

employee benefit plan, who is or may become entitled to a benefit thereunder.

29 U.S.C. § 1002(7)-(8).

The Supreme Court has held that:

the term "participant" is naturally read to mean either "employees in, or reasonably expected to be in, currently covered employment," or former employees who "have . . . a reasonable expectation of returning to covered employment" or who have "a colorable claim" to vested benefits. In order to establish that he or she "may become eligible" for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future. "This view attributes conventional meanings to the statutory language since all employees in covered employment and former employees with a colorable claim to vested benefits 'may become eligible.'"

Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 118 (1989) (internal citations omitted).

Thus, to bring a civil action under ERISA, Melley and Mikulis must have a colorable claim to Plan benefits as the result of their suit. We have interpreted the colorable claim requirement as a lower burden of persuasion than showing

9

likelihood of success on the merits. Daniels v. Thomas & Betts Corp., 263 F.3d 66, 78-79 (3d Cir. 2001).

Mikulis and Melley have raised four arguments as to why they fall within the definition of participant or beneficiary and have statutory standing. First, they maintain that they have standing because they are within the zone of interest protected by ERISA. Second, they claim that they have standing because they have a colorable claim to receive Plan benefits in the future as part of an equitable remedy. Third, they argue that they have standing because they formerly received Plan benefits and they detrimentally relied on Blue Cross's misrepresentations. Finally, Mikulis contends that she has standing because, but for Blue Cross's misrepresentations and omissions, she would not have retired when she did.

For the reasons stated below, we reject these arguments.

### 1. Zone of Interest

To bring a civil action under ERISA, a plaintiff must have constitutional, prudential, and statutory standing. There is no question of Mikulis and Melley's constitutional standing in this case. They argue, however, that they have prudential standing because they are within the "zone of interest" that ERISA was created to protect and that prudential standing gives them statutory standing.

Whether a party has prudential standing depends on whether "a plaintiff's grievance . . . arguably fall[s] within the zone of interest protected or regulated by the statutory provision

10

or constitutional guarantee invoked in the suit." Bennet v. Spear, 520 U.S. 154, 162 (1997). As a general matter, we have found that statutory standing requirements can eliminate prudential standing restrictions but are presumed not to:

> Because prudential standing doctrine is judge-made and not the product of constitutional restraints on the power of the federal courts to hear claims, Congress can eliminate prudential restrictions on standing if it so desires. As a matter of statutory interpretation, however, Congress is presumed to incorporate background prudential standing principles, unless the statute expressly negates them.

Conte Bros. Auto., Inc. v. Quaker State-Slick 50, Inc., 165 F.3d 221, 227 (3d Cir. 1998). "The first inquiry, then, is whether Congress expressly negated [the] prudential standing doctrine in passing the [statute at issue]." Id.

We extensively addressed the interplay of prudential and statutory standing in ERISA cases in Rite Aid. We remarked there that in past decisions we had stated that "[f]ar from abrogating the prudential standing doctrine . . . ERISA § 502(a)(1) . . . *restricts* civil actions brought against a plan administrator to actions brought by a 'participant or beneficiary.'" 334 F.3d at 340 (quoting Saporito v. Combustion Eng'g Inc., 843 F.2d 666, 670-71 (3d Cir. 1988), *vacated on other grounds by* Combustion Eng'g, Inc. v. Saporito, 489 U.S. 1949 (1989)). In other words, the language of § 502(a)(1) sets

11

forth the standing requirements to bring such an action – both prudential and statutory standing:

> In that sense, the "zone of interest" inquiry in the prudential standing analysis for § 502(a)(1) claims is inextricably tied to the question of whether a plaintiff can meet the definitions of either a "participant" or "beneficiary".

Rite Aid, 334 F.3d at 341.

Rite Aid opened the door to some confusion, however, by citing in support of the above quotation on "zone of interest" the case of Vartanian v. Monsanto Co., 14 F.3d 697 (1st Cir. 1994). In the citation, the Rite Aid Court quoted Vartanian parenthetically:

> "In determining who is a 'participant,' for purposes of standing, the definition found in 29 U.S.C. § 1002(7) must be read in the context of traditional concepts of standing. . . . *The ultimate question is whether the plaintiff is within the zone of interest ERISA was intended to protect.*"

334 F.3d at 341 (quoting Vartanian,14 F.3d at 701) (emphasis original to Vartanian).

Mikulis and Melley have focused on this citation and quotation of Vartanian to interpret Rite Aid to support the proposition that the analysis for *statutory* standing under ERISA is actually the *prudential* standing "zone of interest" analysis.

12

This interpretation is not correct. When we stated in Rite Aid that "the 'zone of interest' inquiry in the prudential standing analysis for § 502(a)(1) claims is inextricably tied to whether a plaintiff can meet the definitions of either 'participant' or 'beneficiary'," 334 F.3d at 341, we meant that statutory standing requirements in ERISA § 502(a)(1) were essentially a codification of ERISA's "zone of interest" – we did not mean the inverse, *i.e.*, that prudential standing suffices for statutory standing. Indeed, it would make little sense for Congress to have enacted ERISA § 502(a)(1) to define who may bring suit against a plan administrator if standing to sue were to be determined by the traditional "zone of interest" prudential standing test.

Moreover, despite the citation to Vartanian, we did not undertake a "zone of interest" analysis in Rite Aid. Instead, we focused solely on whether the plaintiff met the ERISA § 3(7) definition of "participant." This focus is consistent with the conclusion that ERISA's statutory standing requirements are a codification of the "zone of interest" analysis. Mukilis and Melley's "zone of interest" argument does not prevail.

### 2. Colorable Claim to a Remedy Under ERISA

ERISA §§ 3(7) and 3(8) define participants and beneficiaries as those "who [are] or may become eligible to receive a benefit of any type from an employee benefit plan. . . ." Tracking this language, Mikulis and Melley's second argument is that they have standing because they are Plan participants/beneficiaries and they qualify as participants/beneficiaries because they have a colorable claim to

13

receive Plan benefits in the future via equitable relief ordering the restoration of the Plan to its pre-January 1, 2001, status or enjoining the retroactive application of the January 1, 2001, Amendment.

Blue Cross contends that Mikulis and Melley waived this issue by not raising it before the District Court. We do not agree. We find sufficient reference before the District Court by Mikulis and Melley to "a colorable claim to vested benefits" to convince us that this argument was not waived.

Turning to the merits of the colorable claim to benefits argument, Blue Cross made four objections to it. First, Blue Cross contends that Mikulis and Melley have not asserted any claim for reinstatement in the Plan under ERISA § 502(a)(1)(B) but have merely requested monetary damages. Blue Cross is incorrect. Mikulis and Melley's joint Amended Class Action Complaint specifically requested that the Court "order the Defendant to reinstitute the Plan as it was in existence prior to the change complained of, and/or" "enjoin Defendant from implementing the revised Plan", not to mention award "such other legal and equitable relief as the Court may deem just and necessary." Mikulis's Second Amended Complaint only requests "Any other legal and equitable relief as the Court may deem just and necessary." Although this is boilerplate, it tracks the language of ERISA § 502(a)(3)(B), 29 U.S.C. § 1132(a)(3)(B), which provides for participants and beneficiaries to bring suit "to obtain other appropriate equitable relief (i) to redress [ERISA violations] or (ii) to enforce any provisions of this subchapter or the terms of the plan".

14

Second, Blue Cross argues that under our decision in Daniels, 263 F.3d at 78, equitable relief is not a plan benefit. Thus, the right to equitable relief cannot give standing. This is not a correct reading of Daniels. Daniels merely determined that monetary damages are not plan benefits. It did not address the question of whether equitable relief could constitute a benefit under a plan. Here, Mikulis and Melley are requesting equitable relief including reinstatement of the Plan "as it was in existence prior to the changes complained of." The *sine qua non* of benefits of the Plan is to be covered by the Plan.

Third, Blue Cross remonstrates that Mikulis and Melley cannot have standing as a result of possible equitable relief because standing must exist at the time a suit is commenced, not at the time of judgment. For constitutional and prudential standing it is well established that standing must exist at the time the suit is commenced and throughout the suit. See, e.g., Friends of the Earth v. Laidlaw Envtl. Servs., 528 U.S. 167, 189 (2000); Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 571 n.5 (1992); PIRG v. Magnesium Elektron, Inc., 123 F.3d 111, 117 (3d Cir. 1997). We have not addressed this issue in regard to statutory standing; moreover, because a decision on this issue is not necessary for the outcome of this case, we do not express an opinion on it now.[4]

---

[4]We note, however, that Blue Cross has wrongly conflated the inquiry for standing with an inquiry on the merits. The issue is not whether litigants are entitled to injunctive relief, but merely whether they have a colorable claim to it. If they have a colorable claim to receiving injunctive relief that would

15

Fourth, Blue Cross maintains that because the amendment of ERISA plans is not a fiduciary act, equitable relief is not available. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes equitable relief only for violations of ERISA's provisions. The amendment of an ERISA plan is not a fiduciary act governed by ERISA. Lockheed Corp. v. Spink, 517 U.S. 882, 890 (1996); Walling v. Brady, 125 F.3d 114, 120 (3d Cir. 1997). Therefore, as the District Court correctly noted, Blue Cross did not violate ERISA by amending the Plan.

Mikulis and Melley, however, alleged breaches of fiduciary duty that included not only the amendment of the Plan, but also misrepresentations about future plan benefits and coverage. Unlike the amendment of the Plan, the provision of information about Plan benefits and coverage is a fiduciary act. Adams v. Freedom Forge Corp., 204 F.3d 475, 492 (3d Cir. 2000). Therefore, "[a]n employee may recover for a breach of fiduciary duty if he or she proves that an employer, acting as a fiduciary, made a misrepresentation that would confuse a reasonable beneficiary about his or her benefits, and the beneficiary acted thereupon to his or her detriment." In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig., 242 F.3d 497, 505 (3d Cir. 2001). If Mikulis and Melley raised a colorable claim of such a breach and detrimental reliance, then

---

make them Plan beneficiaries, then they fall within ERISA §§ 3(7)-(8) definitions of participant and beneficiary, 29 U.S.C. § 1002(7)-(8), and have standing under ERISA § 502(a)(1), 29 U.S.C. § 1132(a)(1).

16

they would have standing because they would have a colorable claim to be eligible for equitable relief under § 502(a)(3).

As the District Court noted, however, Blue Cross' alleged misrepresentations did not divest Melley of her status as a plan beneficiary. It was the January 1, 2001, amendment of the Plan that did so. Melley's status was determined by her situation as surviving spouse of a retired Blue Cross employee. The alleged misrepresentations had no effect on that status nor was Melley in a position to make any changes to her status based on them. Her medical benefits were not a vested benefit, and the Plan contained language, inserted in the 1993 amendment, that it could be changed and that health benefits could be discontinued at any time. Thus, we find no basis to conclude that Melley's status as a beneficiary was affected by the alleged misrepresentations.

Mikulis is in the same situation as Melley in regard to the alleged misrepresentations made since the time of her retirement. Mikulis was not in a position to change her status of retired employee. Mikulis has, however, raised a related argument – "but for" Blue Cross's misrepresentations she would have retired later and would currently be a Plan participant.

In Saporito v. Combustion Engineering, Inc., we adopted a "but for" theory of ERISA standing, holding that "but for the selective divulgence of information [by the plan fiduciary], [appellants] would have been members [of the plan], and, for the purposes of standing to bring an action under ERISA, should be considered as such." 843 F.2d at 672. The Saporito plaintiffs, however, were not and had not been members of the plan in

17

question. Their "but for" claim was one to make them members of a plan concerning which they claimed not to have been informed. Saporito, however, was decided before the Supreme Court's decision in Firestone. The Supreme Court vacated our judgment in Saporito without comment and remanded it in light of its decision earlier that week in Firestone. Combustion Eng'g, Inc. v. Saporito, 489 U.S. 1049 (1989). Since the Supreme Court's ruling in Firestone, we have not had occasion to rule on the issue of whether a claimant, who is a former plan participant, has standing when it is the alleged breach of fiduciary duty that has caused the claimant to lose status as a plan participant.

ERISA's legislative history indicates that Congress intended the federal courts to construe the statutory standing requirements broadly in order to facilitate enforcement of its remedial provisions:

> The enforcement provisions have been designed specifically to provide both the Secretary [of Labor] and participants and beneficiaries with broad remedies for redressing or preventing violations of the [Act]. . . . The intent of the Committee is to provide the full range of legal and equitable remedies available in both state and federal courts and to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities under state law or recovery of benefits due to participants.

18

S. REP. NO. 127, 93d Cong., 2d Sess., 3 (1974), reprinted in 1974 U.S.C.C.A.N. 4639, 4871. Refusing to allow for "but for" standing would frustrate Congress's intention to remove jurisdictional and procedural obstacles to ERISA claims.

The majority of circuits that have addressed whether there is a "but for" exception for ERISA standing have adopted it. In Christopher v. Mobil Oil Corp., 950 F.2d at 1221, the Fifth Circuit concluded that "it would seem more logical to say that but for the employer's conduct alleged to be in violation of ERISA, the employee *would* be a current employee with a reasonable expectation of receiving benefits, and the employer should not be able through its own malfeasance to defeat the employee's standing." Similarly, in McBride v. PLM Int'l, Inc, 179 F.3d 737, 743 (9th Cir. 1999), the Ninth Circuit held that "[i]f an employee is a participant at the time of the alleged ERISA violation and alleges that he was discharged or discriminated against because of the protected whistleblowing activities, we hold that such an employee has standing to sue under ERISA." Accord, Swinney, 46 F.3d at 518-519; Mullins v. Pfizer, 23 F.3d 663, 668 (2nd Cir. 1994); Vartanian, 14 F.3d at 702. But see Raymond v. Mobil Oil Corp., 983 F.2d 1528, 1536 (10th Cir. 1993); Stanton v. Gulf Oil Corp., 792 F.2d 432 (4th Cir. 1986) (rejecting "but for" theory of ERISA standing).

A plan administrator's alleged ERISA violation should not be the means by which the plan is able to insulate itself from suits arising from the alleged violation. We will not read ERISA so myopically. As the Sixth Circuit observed, "ERISA should not be construed to permit the fiduciary to circumvent his ERISA-imposed fiduciary duty in this manner." Swinney, 46

19

F.3d at 518-519.  Therefore, in the proper case, we may find that a plaintiff has statutory standing if the plaintiff can in good faith plead that she was an ERISA plan participant or beneficiary and that she still would be but for the alleged malfeasance of a plan fiduciary.

Turning to the case before us, in reviewing Mikulis's allegation that she would not have retired when she did had Blue Cross not made various misrepresentations and omissions, we must keep in mind that Mikulis retired on February 27, 1993, and any reliance on statements by Blue Cross that induced her to retire must have occurred before that time.  More importantly, for Mikulis to prevail, her reliance must have been on "a material misrepresentation that would confuse a reasonable beneficiary about his or her benefits, and the beneficiary acted thereupon to his or her detriment."  Unisys, 242 F.3d at 505.

Mikulis was instructed by the District Court in its Memorandum and Order of May 7, 2004, that in her Second Amended Complaint, she must set forth the specific actions she took or refrained from taking in reliance on Blue Cross's alleged misrepresentations and identify how she was harmed by the asserted action or forbearance.  She has not done so except in generalities, as she did in her earlier complaint.  Nor has she alleged how much longer she would have worked "but for" the alleged misrepresentations.  In 1993, the 15 year cut-off of benefits, instituted in 2001, was not mentioned at all.  There is no basis to conclude from the allegations in the complaint that, even if she had worked longer, she would still have qualified for benefits after the 2001 amendment.

20

In addition, Mikulis has not alleged that the statements made by Blue Cross prior to the 1993 amendment were false at the time that they were made. Without such an allegation, there is no ground to assert a breach of fiduciary duty. Id. A representation is not a misrepresentation if it is an accurate reflection of the plan administrator's intent when the statement was made.

We conclude therefore that Mikulis's "but for" claim is not a colorable claim for benefits and thus is insufficient to give her standing under Firestone.

## IV. Conclusion

For the reasons discussed above, we will affirm the District Court's dismissal of Melley and Mikulis's claims.

*Leuthner, et al. v. Blue Cross and Blue Shield of Northeastern Pennsylvania*

No. 04-4389

FISHER, *Circuit Judge*, concurring in part and dissenting in part.

The majority concludes that neither of the two intervenor-plaintiffs in this case has standing to pursue a claim for breach of fiduciary duty under § 502(a) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a). While I agree that Elizabeth Melley cannot maintain such a claim, because she was never an employee of Blue Cross and could not have relied on the company's purported misrepresentations, I believe that Jean Mikulis, as a former Blue Cross employee, has demonstrated a potential right to relief and should be allowed to proceed with her case. I respectfully dissent from the decision to affirm the dismissal of her claim.

The majority acknowledges that, "in a proper case, we may find that a plaintiff has statutory standing if the plaintiff can in good faith plead that she was an ERISA plan participant or beneficiary and that she still would be but for the alleged malfeasance of a plan fiduciary." *Supra* p. 20 (majority op.). I submit that this is a "proper case." According to the complaint, Mikulis was urged by Blue Cross in 1992, after nearly thirteen years of service, to accept early retirement. She acquiesced after being assured by the company that she would receive full health

22

insurance benefits upon retirement and that those benefits would continue "without amendment" for her lifetime. (A. 144, 146, 158.) This promise, of guaranteed lifetime benefits without the possibility of change, is plainly contrary to plan provisions reserving the administrator's right to amend. As a result of her reliance on this misrepresentation, Mikulis was denied benefits when the plan was amended in 2001 to limit coverage to only those retirees who had worked at the company for more than fifteen years. (A. 168, 173.) Had Mikulis known in 1992 that her benefits were subject to change, she presumably would have remained in the company's employ, possibly exceeding the fifteen-year threshold for coverage under the current plan. (A. 144-46, 158.) In other words, "but for" the alleged misrepresentation by Blue Cross, Mikulis might still be a participant in the plan. *Cf. supra* p. 6 (majority op.) ("Mikulis contends that, but for Blue Cross's misrepresentations and omissions, she would not have taken early retirement."). She thus has standing to assert a claim for breach of fiduciary duty. *See*, *e.g.*, *Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 73-76, 78-79 (3d Cir. 2001).

The deficiencies cited by my colleagues are not grounds for dismissal. They complain that (1) Mikulis has set forth only "generalities" regarding the factual predicate of her claim, (2) she has not specified "how much longer she would have worked 'but for' the alleged misrepresentations," and (3) she "has not alleged that the statements made by Blue Cross prior to the 1993 amendment were false at the time that they were made." *Supra* pp. 20-21 (majority op.). The third point seems to ignore Mikulis's allegation that the company promised her in 1992 that the health insurance benefits offered under the then-

23

existing plan would not be subject to change, a representation that is clearly contrary to the plan's terms. (A. 142-44, 168, 173.)

The other two points are similarly invalid, as they seem to impose upon Mikulis a "heightened pleading standard," demanding that she set forth the facts underlying her claim with particularity. This approach has been soundly rejected by the Supreme Court as inconsistent with the liberal pleading system embodied in the Federal Rules of Civil Procedure, which require only that the complaint provide "fair notice" of the proposed cause of action, allowing the court to assess whether relief is potentially available and permitting the parties to engage in meaningful discovery. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002); *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §§ 1202, 1215 (3d ed. 2004). The complaint in this case satisfies this minimal burden. *Cf. Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) ("[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."). The concerns raised by my colleagues reflect possible deficiencies in the proof, not defects in the pleadings, and they should be addressed through discovery and summary judgment, not dismissal of the complaint. *See, e.g.*, *Swierkiewicz*, 534 U.S. at 514.

I would reverse the order of the District Court dismissing the complaint as to Mikulis and remand for further proceedings.