JORDAN, Circuit Judge,
Dissenting.
I agree with the Majority and the District Court that Lincoln should win this case, but I would vacate and remand for dismissal of the complaint because Edmonson lacks both constitutional and statutory standing, since she abandoned her claim for injunctive relief under ERISA and seeks only the payment of funds she claims that Lincoln wrongfully retained. I would not reach the issue of the alleged breach of Lincoln’s fiduciary duty under ERISA.
“To bring a civil action under ERISA, a plaintiff must have constitutional, prudential, and statutory standing.” Leuthner v. Blue Cross & Blue Shield of Ne. Pa., 454 F.3d 120, 125 (3d Cir.2006). Constitutional standing, as the Majority points out, requires three elements: injury-in-fact, a causal connection between that injury and the complained-of conduct, and the likelihood that the injury can be redressed by court action. As to the first element, it is well-established that “[a]n injury-in-fact must be a palpable and distinct harm that[ ] ... affect[s] the plaintiff in a personal and individual way.” Freeman v. Corzine, 629 F.3d 146, 153 (3d Cir.2010) (internal quotation marks omitted).
The Majority seems to treat a plaintiff demanding disgorgement as a special case *430 for purposes of the injury-in-fact requirement of Article III standing. It suggests that a plaintiff seeking that remedy need not demonstrate an actual injury because “[a] requirement of a net financial loss would allow fiduciaries to retain ill-gotten profit—exactly what disgorgement claims are designed to prevent—so long as the breaches of fiduciary duty do not harm the plan or beneficiaries.” (Majority Op. at 415.) Thus, the Majority concludes that “the nature of disgorgement claims suggests] that a financial loss is not required for standing, as a loss is not an element of a disgorgement claim.” (Id. at 415)[1]
That conclusion, however, runs counter to our holding in Horvath v. Keystone Health Plan East, Inc., 333 F.3d 450 (3d Cir.2003). In that case, an ERISA plan participant alleged that a fiduciary had violated an ERISA requirement that a fiduciary disclose “all material facts relating to the insurance benefits it provides.” Id. at 453 (internal quotation marks omitted). In particular, the plaintiff said that the fiduciary had failed to disclose certain physician incentives that had the potential to decrease the overall quality of care provided. Id. Although the plaintiff did not allege that she had been personally affected by the existence of the incentives or that the care that she received under the plan was in any way deficient, she sought both injunctive relief as well as restitution or disgorgement of the amount by which she and other members of the putative class had supposedly overpaid as a result of the fiduciary’s failure to make the required disclosures. We decided that a plaintiff claiming a fiduciary breach under ERISA “need not demonstrate actual harm in order to have standing to seek injunctive relief’ to require a fiduciary to comply with ERISA, but that “requests for restitution and disgorgement, both of which are individual in nature[,] ... require her to demonstrate individual loss.” Id. at 456.
It is true, as the Majority insists, that Horvath is different from the present case. The plaintiffs claim there was “premised on her argument that her firm overpaid for the healthcare she received,” id., and there was no other evidence of individual harm. In this case, by contrast, as the District Court observed, “Plaintiff alleged that she suffered an individual loss, measured as the ‘spread’ or difference between the interest that Defendant allegedly earned on the benefits in Plaintiffs SecureLine account, and the interest that Defendant paid to Plaintiff.” Edmonson v. Lincoln Nat’l Life Ins. Co., 777 F.Supp.2d 869, 881 (E.D.Pa.2011).[2]
*431 But in an important and dispositive respect the cases are the same: just as the plaintiff in Horvath “concedefd] that the care and coverage she received as a member of [her employer’s] HMO was never affected by the existence of physician incentives,” 333 F.3d at 456, Edmonson effectively concedes that she received everything to which she was entitled under her husband’s employer’s plan. See Edmonson, 777 F.Supp.2d at 875 (noting that Edmonson agreed at oral argument that she had received both her “claimed benefit, in the amount of $10,000.00[,] plus $138.08 interest” by check shortly after she decided to close her SecureLine Account). Moreover, Edmonson has adduced no evidence that, if she had been paid in a lump sum rather than through a retained asset account, she would have invested her death benefit and generated the same profit or “spread” that she now seeks to reclaim from Lincoln. She has merely hypothesized a greater benefit, had Lincoln administered the plan in a different way than it did. That ought not be enough. See Kendall v. Emps. Ret. Plan of Avon Prods., 561 F.3d 112, 119 (2d Cir.2009) (finding that an ERISA plan participant’s lost opportunity to receive higher benefits did not constitute an injury-in-fact); Drutis v. Rand McNally & Co., 499 F.3d 608, 611 (6th Cir.2007) (holding that plaintiffs who claimed damage based on “what they would have received if the[ir] [employer’s] plan were re-formed to meet the requirements of ERISA” failed to allege an injury-in-faet). Thus, although Edmonson may have attempted to individualize her claim by basing it on the lost spread, her injury remains “entirely speculative” and “hypothetical at best,” and she accordingly lacks the “irreducible constitutional minimum of standing,” which is “an injury in fact that is ... actual or imminent, not conjectural or hypothetical.” Drutis, 499 F.3d at 611 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)) (internal quotation marks omitted).[3]
The Majority correctly observes that “[o]ur decision in Horvath did not revolve around whether the plaintiff suffered a financial loss.” (Majority Op. at 416.) It did, however, turn on the question of whether the plaintiff had demonstrated an individual loss, i.e., an actual injury to that particular plaintiff. That showing is required when a plaintiff is seeking individual relief under ERISA. See In re Unisys Sav. Plan Litig., 173 F.3d 145, 159 (3d Cir.1999) (holding that a plaintiff seeking individual relief under ERISA § 502(a)(3), in contrast to § 502(a)(2), which allows relief on behalf of a plan, is required to prove an individual loss). Yet the Majority appears to conclude, as one other court has, that Horvath requires only that an ERISA plaintiff demonstrate that she, rather than the plan, was “personally affected by the alleged breach.” Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C., 433 F.3d 181, 200 (2d Cir. *432 2005) (interpreting Horvath’s “individual loss” requirement). That unduly lax formulation effectively eliminates the injury-in-fact requirement, as virtually any breach of fiduciary duty to a plan can be said to “personally affect” a plan participant through its impact on the plan itself.
The Majority believes the meaning of Horvath to be that either “a plan has the right to the profit, [and] the individual plaintiff has not suffered a constitutional injury,” or else the plaintiff “has an individual right to the defendant’s profit” and she has suffered an injury-in-fact. (Majority Op. at 417.) That, however, presupposes that there are only two possibilities when a breach of an ERISA fiduciary duty is alleged. There is, however, a third possibility: that neither the plan nor the individual is entitled to the defendant’s profit. That would be the case when a plan permitted the fiduciary to retain and invest funds pending the payment of a benefit, and the plaintiff received the fixed amount to which she was entitled, as is argued to be the case here. And in such a case, neither the plan nor the individual can rightly allege an injury-in-fact based on not having received something to which neither was entitled, regardless of whether the defendant breached its fiduciary duty.[4]
In other words, any right to the profit generated with plan assets, the loss of which is now said to be an injury-in-fact, does not automatically follow from the alleged breach, at least not in a defined benefit plan of the type at issue here. Cf. Harley v. Minn. Min. & Mfg. Co., 284 F.3d 901, 905-06 (8th Cir.2002) (discussing the “proper focus” of the standing inquiry in an action “to seek relief ... for [a] particular breach of duty, given the unique features of a defined benefit plan”). As the term implies, a defined benefit plan entitles a participant to no more than her benefit as defined. “[T]he employee, upon retirement, is entitled to a fixed periodic payment.” Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 439, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999) (citation and internal quotation marks omitted). As a result, “the employer typically bears the entire investment risk and ... must cover any underfunding as the result of a shortfall that may occur from the plan’s investments.” Id. But, “[s]ince a decline in the value of a plan’s assets does not alter accrued benefits, members similarly have no entitlement to share in a plan’s surplus. ...” Id. at 440, 119 S.Ct. 755.
In this case, the defined amount to which Edmonson was entitled was her $10,000 death benefit—a fixed entitlement that remained in place after her Secure-Line Account was established, even if Lincoln had lost money investing the funds backing that account. Having no claim on the profits, she cannot claim an individual loss—or even that she was “personally affected”—by not receiving a share of those profits. And “the limits on judicial power imposed by Article III counsel against permitting participants or beneficiaries who have suffered no injury in fact from suing to enforce ERISA fiduciary duties on behalf of the Plan.” Harley, 284 F.3d at 906.
Notwithstanding the requirements of Article III, and worried that imposing a loss requirement would mean that fiduciaries could “retain ill-gotten profit ... so long as the breaches of fiduciary duty do not harm the plan or beneficiaries” (Majority Op. at 415), the Majority treats an action for disgorgement as sui generis. The Majority says that an ERISA plaintiff *433 seeking disgorgement of profits to which she claims entitlement need only plead that there has been a breach and that the plan itself is not entitled to recover. But our decision in Horvath states quite plainly that a fiduciary duty breach is sufficient to confer standing on an ERISA plaintiff only “with regard to injunctive relief.” 333 F.3d at 456. That is not the relief that Edmonson is seeking, so, per our own binding precedent, she does not have constitutional standing to press her claim.[5]
In addition to constitutional standing, “[t]o bring a civil action under ERISA, a plaintiff must have ... statutory standing.” Leuthner, 454 F.3d at 125. The inquiry into statutory standing requires a court to determine “whether Congress has accorded this injured plaintiff the right to sue the defendant to redress [her] injury.” Graden v. Conexant Sys. Inc., 496 F.3d 291, 295 (3d Cir.2007) (emphasis in original). Under ERISA § 502(a)(3)(B), “[a] civil action may be brought ... by a participant, beneficiary, or fiduciary ... to obtain ... appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.” 29 U.S.C. § 1132(a)(3).[6] Thus, “the statute author *434 izes appropriate equitable relief[,] [and] [w]e should expect that courts, in fashioning appropriate equitable relief, will keep in mind the special nature and purpose of employee benefit plans, and will respect the policy choices reflected in the inclusion of certain remedies and the exclusion of others.” Varity Corp. v. Howe, 516 U.S. 489, 515, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (emphasis in original) (quoting Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)) (internal quotation marks omitted); see also id. at 497, 116 S.Ct. 1065 (noting Congress’s “desire not to create a system that is so complex that administrative costs, or litigation expenses, unduly discourage employers from offering welfare benefit plans in the first place”).
The statutory standing problem for Edmonson is that, as we said in Horvath, “claims for restitution and disgorgement [under ERISA 502(a)(3) ] are likely barred by the Supreme Court’s ... decision in Great-West [Life & Annuity Insurance Co. v. Knudson, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002) ].” Horvath, 333 F.3d at 457 n. 3. In Great-West Life, the Court pointed out that ERISA § 502(a)(3) provides only equitable relief, see 534 U.S. at 209-10, 122 S.Ct. 708, and then said that whether relief for an ERISA fiduciary breach is cognizable as equitable relief under that section “depends on the basis for [the plaintiffs] claim and the nature of the underlying remedies sought,” id. at 213, 122 S.Ct. 708 (quoting Reich v. Cont’l Cas. Co., 33 F.3d 754, 756 (7th Cir.1994)) (internal quotation marks omitted). The Court noted that “[a]lmost invariably ... suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for ‘money damages,’ as that phrase has traditionally been applied, since they seek no more than compensation for a loss resulting from the defendant’s breach of legal duty.” Id. at 210, 122 S.Ct. 708 (citation and internal quotation marks omitted). It concluded that, “[i]n cases in which the plaintiff could not assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him, the plaintiff had a right to restitution at law... ” Id. at 213, 122 S.Ct. 708 (internal quotation marks omitted). By contrast, “for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant’s possession.” Id. at 214, 122 S.Ct. 708.
The “disgorgement” Edmonson seeks is nothing more than compensation for an alleged loss allegedly caused by an alleged breach of Lincoln’s fiduciary duty. In other words, it is precisely the type of relief that Great-West Life said was legal, not equitable. The Majority’s discussion of disgorgement in support of its conclusion that Edmonson has constitutional standing makes that clear. The Majority says that the purpose of an action seeking disgorgement, at least in the ERISA context, is “to deter the fiduciary from engaging in disloyal conduct by denying him the profits of his breach” (Majority Op. at 416), and that the fiduciary “is liable for any profits he has made through his breach of trust,” {id. at 416 n. 5 (internal quotation marks omitted)). If that is the case, then it is difficult to see how Edmonson’s claim for “disgorgement” is anything other than an attempt to “impose personal liability on the defendant,” Great-West Life, 534 U.S. at 214, 122 S.Ct. 708, for “the defendant’s breach of legal duty,” id. at 210, 122 S.Ct. 708. That certainly has all the marks of legal relief that is unavailable under § 502(a)(3). See Mertens v. Hewitt As *435 socs., 508 U.S. 248, 255, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (“Although they often dance around the word, what petitioners seek is nothing other than compensatory damages—monetary relief for all losses [they] sustained as a result of the alleged breach of fiduciary duties. Money damages are, of course, the classic form of legal relief.” (emphasis in original)).
Perhaps in an effort the avoid that problem, the Majority recasts disgorgement as an “accounting for profits” for purposes of statutory standing, so that it falls within an exception to Great-West Life’s bar on § 502(a)(3) actions that seek to impose personal liability on a defendant. See Great-West Life, 534 U.S. at 214 n. 2, 122 S.Ct. 708 (recognizing a “limited exception for an accounting for profits, a form of equitable restitution”).[7] There are two problems with that rhetorical shift. First, an accounting is only proper when “a plaintiff is entitled to a constructive trust on particular property held by the defendant, [so that] he may also recover profits produced by the defendant’s use of that property.” Id.; see also In re Unisys Corp. Retiree Med. Benefits ERISA Litig., 579 F.3d 220, 238 (3d Cir.2009) (“[T]he question here is not whether disgorgement of profits or accounting for profits is an equitable remedy, but rather whether the plaintiffs have demonstrated that their claims for relief meet the requirements for applying this type of remedy.”).[8] Entitlement to a constructive trust in turn, requires that “the defendant (i) has been unjustly enriched (ii) by acquiring legal title to specifically identifiable property (iii) at the expense of the claimant or in violation of the claimant’s rights.... ” Restatement (Third) of Restitution and Unjust Enrichment § 55 cmt. a (2011). Thus, a “[constructive trust is the principal device for vindicating equitable ownership against conflicting legal title....” Id. This case presents exactly the opposite situation. Here, legal title passed to Edmonson when Lincoln established her Secure-Line Account. Lincoln had no legal title to the funds, nor was Edmonson left with a mere equitable claim, during the period for which she contends that she is entitled to the excess spread. So this case does not present the circumstances in which a plaintiff would be entitled to the remedy of a constructive trust or an accounting for the profits on that trust. See Unisys, 579 F.3d at 238 (concluding that plaintiffs could not recover under § 502(a)(3) where the requirements for an accounting for profits were not met).[9]
*436 Second, according to § 51(4) of the Restatement of Restitution, the purpose of the restitutionary remedy of an accounting is to “eliminate profit from wrongdoing while avoiding, so far as possible, the imposition of a penalty.” Thus, “[t]he profit for which the wrongdoer is liable by the rule of § 51(4) is the net increase in assets of the wrongdoer, to the extent that this increase is attributable to the underlying wrong.” Id. § 51 cmt. e. In this case, the profit that Lincoln may (or may not) have generated is attributable to Edmonson’s decision not to withdraw the funds from her SeeureLine Account when she could have. The Majority itself acknowledges that. (See Majority Op. at 423 (“This increased potential for profit! ] ... is wholly dependent on Edmonson’s actions.... ”).) There is thus no basis for an accounting for profits, and the limited exception that the Great-West Life Court recognized to its general rule that compensation for breach of a legal duty is unavailable under ERISA § 502(a)(3) does not apply to Edmonson’s claim.
As the Supreme Court has explained, in the context of claims arising under ERISA § 502(a)(3), “[ejquitable relief must mean something less than all relief.” Mertens, 508 U.S. at 258 & n. 8, 113 S.Ct. 2063 (internal quotation marks omitted). “Respecting Congress’s choice to limit the relief available under § 502(a)(3) to ‘equitable relief requires us to recognize the difference between legal and equitable forms of restitution. [When] petitioners seek only the former, their suit is not authorized by § 502(a)(3).’” Great-West Life, 534 U.S. at 218, 122 S.Ct. 708. Because what Edmonson seeks under the label of “disgorgement” is in reality a claim for damages and is the only relief she seeks, she lacks both statutory standing and constitutional standing.
With all respect to my colleagues in the Majority, I would vacate the summary judgment for Lincoln and remand to the District Court with instructions to dismiss the complaint, based on Edmonson’s lack of standing.[10]

. The Majority finds support for that conclusion in the "principles of ERISA” whose "duty of loyalty bars a fiduciary from profiting even if no loss to the plan occurs.” (Majority Op. at 415.) That approach conflates constitutional and statutory standing in a manner that is particularly inapt in this case. Although "[t]he actual or threatened injury required by Art. Ill may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing,” that is only true "with regard to injunctive relief.” Horvath v. Keystone Health Plan East, Inc., 333 F.3d 450, 456 (3d Cir.2003) (citation and internal quotation marks omitted). But that is not the relief that Edmonson is seeking.

. The District Court concluded that that was “a sufficient allegation of injury in fact, caused by defendant’s conduct” to establish Article III standing. Edmonson v. Lincoln Nat’l Life Ins. Co., 777 F.Supp.2d 869, 881 (E.D.Pa.2011). The Court, however, considered standing only in response to Lincoln’s motion to dismiss. The Court declined to follow a case cited by Lincoln in support of its argument that Edmonson lacked standing because, in the Court’s view, it "imposed too high a burden on a plaintiff with respect to the jurisdictional allegations on a Rule 12(b)(1) motion,” id., but the Court did not revisit the issue at the summary judgment stage, even though Edmonson had provided no further evidence of an injury-in-fact.

. That is also the conclusion that the United States District Court for the Southern District of New York reached in Faber v. Metro. Life Ins. Co., No. 10588(HB), 2009 WL 3415369 (S.D.N.Y. Oct. 23, 2009), aff'd, 648 F.3d 98 (2d Cir.2011), on identical facts. See id. at *5 (noting that "this pool of funds to which [Plaintiffs] claim entitlement is not 'identifiable and quantifiable;' rather, to identify and quantify any measure of relief for the Plaintiffs would require an accounting to determine what amount of funds allegedly should be reclaimed by the Plaintiffs and the putative class”); id. (noting that "Plaintiffs do not—• and cannot—deny that they have received the full amount of benefits to which they were entitled”). Edmonson’s claim for disgorgement is similarly based not on a particular amount of interest due to her, but rather on an unidentified amount of investment profit that Lincoln allegedly earned while her SecureLine assets were in its possession.

. As discussed infra, the remedy for a fiduciary breach in such circumstances is not damages, but rather an injunction or "other appropriate equitable relief,” i.e., the remedy provided under ERISA § 502(a)(3).

. Relying on our reasoning in Horvath, the Second Circuit has come to the same standing conclusion in two cases closely resembling this one. First, in Kendall v. Employees Retirement Plan of Avon Products, 561 F.3d 112 (2d Cir.2009), an ERISA plan participant took issue with a provision that partially offset social security payments against plan benefits based on a formula that penalized certain retirees. The plaintiff claimed injury on the grounds that "the Offset under the Plan prevents her from realizing higher benefits,” id. at 119, and argued that her employer could either adjust the formula to spread it more evenly or eliminate the offset altogether, id. at 119 n. 14. The Court observed that the plaintiff "concedes that her future benefits under a modified Plan that conforms to ERISA are not yet determined” and held that her "claim, that she would receive more in benefits were the Offset to be eliminated or the Plan modified to conform to ERISA, is not an injuiy-infact.” Id. at 122. The Court also noted that “the best [plaintiff] offers the court is a calculation of how a hypothetical Plan participant would be injured” by the offset provision of the plan. Id. Edmonson has not even provided such a hypothetical calculation of her lost "spread.”
Second, in Faber v. Metropolitan Life Insurance Co., 648 F.3d 98 (2d Cir.2011), as in this case, an ERISA plan beneficiary complained that her benefit had been paid in the form of a retained asset account rather than in a lump sum. The Court noted that "[i]n the ERISA context, we have drawn a distinction between constitutional standing to seek injunctive relief and constitutional standing to seek disgorgement.” Id. at 102. The Court concluded that "[plaintiff] need not demonstrate actual harm in order to have standing to seek injunctive relief requiring that [defendant] satisfy its statutorily-created ... fiduciary responsibilities,” but that "[obtaining restitution or disgorgement under ERISA requires that a plaintiff satisfy the strictures of constitutional standing by demonstrating individual loss; to wit, that they have suffered an injury-in-fact.” Id. (alterations and emphasis in original) (quoting and citing Horvath, 333 F.3d at 456-57) (internal quotation marks omitted). The only reason that the Faber Court did not dismiss the action based on standing was that that plaintiff was seeking injunctive relief against the insurer as well. See id. at 103 (agreeing with the district court "insofar as it concluded that Faber has constitutional standing to seek injunctive relief”). Again, that is not the relief that Edmonson seeks in this case.

. In its analysis of statutory standing, the District Court focused only on whether Edmonson was a "beneficiary” within the meaning of ERISA § 502(a)(3) when she commenced this lawsuit, given that her claim had already been paid in full. The Court concluded that she was, because “plaintiff's status [is] measured at the time the breach of fiduciary duty occurred, rather than the time of the appeal.” Edmonson, 777 F.Supp.2d at 882 (citing Daniels v. Thomas & Betts Corp., 263 F.3d 66, 78 (3d Cir.2001)). The Court did not consider whether she lacks statutory standing based on the relief that she seeks.

.We recognized an equitable restitution claim under ERISA in Plucinski v. I.A.M. National Pension Fund, 875 F.2d 1052 (3d Cir.1989), holding that “there is an equitable cause of action by employers for the recovery of contributions erroneously paid to pension funds due to a mistake of fact or law.” Id. at 1057. However, we characterized restitution as an equitable remedy only to the extent that the plan sponsor had made an "honest mistake” and limited its recovery to the specific amount erroneously paid into the pension fund. Id. at 1058. But we held that equitable restitution does not include an award of interest on that amount for the time it was held by the fund. Id. at 1058 n. 6. That is, in essence, the remedy that Edmonson seeks in this case.

. The Supreme Court explicitly characterized an accounting for profits, requiring entitlement to a constructive trust, as a "limited exception” to what it concluded was ERISA’s bar on standing to seek certain types of restitutionary relief. Great-West Life, 534 U.S. at 214 n. 2, 122 S.Ct. 708. I therefore fail to see how Edmonson’s ability to assert a constructive trust over the assets securing her Secure-Line Account "goes to the merits of her claim, not statutory standing,” as the Majority contends. (Majority Op. at 420 n. 11.)

. The Majority cites Skretvedt v. E.I. DuPont De Nemours, 372 F.3d 193 (3d Cir.2004) for the proposition that "[t]he disgorgement remedy is equitable even though Lincoln no longer ha[d] possession of the retained assets, *436 making a claim for a constructive trust unnecessary.” (Majority Op. at 419-20.) In that case, we held that a beneficiary had an equitable claim for interest during the period that payment of a benefit was delayed, see Skretvedt, 372 F.3d at 209, the contrary conclusion that we reached in Plucinski, see supra note 7. But that equitable claim was limited to the period during which the plan wrongly retained legal title to the funds, i.e., a period during which the requirements of a constructive trust were satisfied. See Skretvedt, 372 F.3d at 209 (analogizing the claimed interest to "prejudgment interest” on a claim that had already been adjudicated). Thus, we did not hold in Skretvedt that disgorgement is an equitable remedy where the defendant no longer had legal title to the beneficiary's funds, as in this case.

. Although I would not reach the merits of Edmonson's appeal, it strikes me that the Majority's merits decision is at odds with its conclusions as to her constitutional and statutory standing. Constitutional standing requires, in addition to an injury-in-fact, “a causal connection between the injury and the conduct complained of—the injury has to be fairly ... tracefable] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party....” Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (alterations in original) (citation and internal quotation marks omitted). The Majority concludes that Lincoln’s ability to generate a profit using the funds backing her SeeureLine Account was "wholly dependent on Edmonson's actions,” i.e., her decision not to withdraw all of her funds as soon as the account was established, and that that "is insufficient to result in a breach of Lincoln’s fiduciary duties.” (Majority Op. at 423.) *437 That suggests that Edmonson's claimed injury was "fairly traceable" to her own inaction, rather than to Lincoln’s payment of her death benefit using a SecureLine Account, and that she has failed to plead causation for purposes of Article III standing.
Similarly, in order to claim statutory standing based on Great-West Life’s exception for an accounting for profits, Edmonson must demonstrate that those profits are “attributable to the underlying wrong.” Restatement of Restitution § 51 cmt. e. Because the majority concludes that Lincoln has not breached its fiduciary duty, there is no “underlying wrong” that can be the subject of a restitutionary remedy. That further undercuts the Majority’s conclusion that her claim for disgorgement is really an equitable claim for an accounting, and suggests that she lacks standing under ERISA § 502(a)(3).